UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


WOMANCARE OF ORLANDO, INC.; WOMANCARE
OF DAYTONA, INC.; RALPH L. BUNDY, M.D.;
PLANNED PARENTHOOD OF SOUTHWEST AND
CENTRAL FLORIDA, INC.; A JACKSONVILLE
WOMEN'S HEALTH CENTER, INC.; and EDWARD
R. WATSON, M.D.,

        Plaintiffs,

v.                                                    4:05cv222-WS

JOHN O. AGWUNOBI, in his official capacity as
Secretary of the Florida Department of Health,

        Defendant.

_____

ORDER DENYING PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION

The plaintiffs in this case challenge, on its face, the Florida Legislature's recently-enacted Parental Notice of Abortion Act (the "Act"), signed into law on May 25, 2005, and codified at section 390.01114, Florida Statutes.  The Act went into effect on June 30, 2005, upon the adoption of rules and forms by the Florida Supreme Court.

Before the court at this time is the plaintiffs' motion for temporary restraining order and/or for preliminary injunction.  Doc. 2.  The defendant, John O. Agwunobi, Secretary of the Florida Department of Health, has responded in opposition to the motion, as has the intervenor, Allan G. Bense, Speaker of the Florida House of

Representatives.  Docs. 26 & 27.  The court heard argument from counsel on July 7,

2005.  Having determined that the Plaintiffs were not likely to succeed on the merits of

their claims, the court denied their motion for preliminary injunction in open court.  This

order commemorates that in-court ruling.

I.  BACKGROUND

A.

In 1999, the Florida Legislature passed a parental notification of abortion act that

was challenged in court under the privacy provisions of the Florida Constitution.  In

North Florida Women's Health and Counseling Services v. State, 866 So. 2d 612 (Fla.

2003), the Florida Supreme Court held that the 1999 act violated Florida's constitutional

right to privacy.

In response to the Florida Supreme Court's decision in North Florida Women's

Health and Counseling Services, the Florida Legislature proposed, and the voters

ratified, a constitutional amendment authorizing the Florida Legislature, notwithstanding

a minor's right to privacy under Florida law, to require notification to a parent or

guardian before termination of a minor's pregnancy.  Specifically, the amendment

provides as follows:

> The legislature shall not limit or deny the privacy right
> guaranteed to a minor under the United States Constitution
> as interpreted by the United States Supreme Court.
> Notwithstanding a minor's right of privacy provided in Section
> 23 of Article I, the Legislature is authorized to require by
> general law for notification to a parent or guardian of a minor
> before the termination of the minor's pregnancy. The
> Legislature shall provide exception to such requirement for
> notification and shall create a process for judicial waiver of
> the notification.

Fla. Const. art. X, § 22.

The 2005 Florida Legislature responded to the Florida voters' mandate by enacting the Act that is being challenged in this case.  In essence, the Act requires a physician to notify the parent or legal guardian of a minor at least 48 hours before performing an abortion on that minor.  Fla. Stat. § 390.01114(3)(a).  The physician must provide "actual notice"[1] unless "actual notice is not possible after a reasonable effort has been made," in which case "constructive notice"[2] must be given.  Id.  Notice is not required if: (1) "[i]n the physician's good-faith clinical judgment, a medical emergency exists and there is insufficient time for the attending physician to comply with the notification requirement;" (2) the parent or guardian waives notice in writing; (3) the minor is or has been married or has had the disability of nonage removed; (4) the minor has a minor dependent child; or (5) the minor has successfully petitioned a circuit court for a waiver of the notice requirement.  § 390.0114(3)(b).

To obtain a judicial waiver of the notice requirement, a minor "may petition any circuit court in a judicial circuit within the jurisdiction of the District Court of Appeal in which she resides."  § 390.01114(4)(a) (emphasis added).  The Act does not define the term "resides;" nor does it expressly limit the availability of a judicial waiver to residents

---

[1]  "Actual notice" means "notice that is given directly, in person or by telephone, to a parent or legal guardian of a minor, by a physician, at least 48 hours before the inducement or performance of a termination of pregnancy."  § 390.01114(2)(a).

[2]  "Constructive notice" means "notice that is given in writing, signed by the physician, and mailed at least 72 hours before the inducement or performance of the termination of pregnancy, to the last known address of the parent or legal guardian of the minor, by certified mail, return receipt requested, and delivery restricted to the parent or legal guardian."  For purposes of "constructive notice," delivery is deemed to have occurred after 72 hours have passed.  § 390.01114(2)(c).

of the State of Florida.

The bypass provision gives the minor the right to court-appointed counsel, allows the minor to file her petition under a pseudonym or through the use of initials, and-- because the petition is deemed granted if the circuit court fails to rule within 48 hours after the petition is filed--guarantees expeditious handling of the petition by the circuit court.  § 390.01114(4)(a), (b).

The circuit court must dismiss the petition unless it finds, (1) by clear and convincing evidence, that the minor "is sufficiently mature to decide whether to terminate her pregnancy;" (2) by a preponderance of the evidence, that there "is evidence of child abuse or sexual abuse of the petitioner by one or both of her parents or her legal guardian;" or (3) by a preponderance of the evidence, that "the notification of a parent or guardian is not in the best interest of the petitioner."  § 390.01114(4)(c), (d).  "An expedited appeal shall be available, as the Supreme Court provides by rule, to any minor to whom the circuit court denies a waiver of notice."  § 390.01114(4)(f).  On June 30, 2005, the Florida Supreme Court adopted an amendment to Florida Rule of Appellate Procedure 9.110, which provides that a "district court of appeal shall render its decision on the appeal [of an order dismissing a petition for judicial waiver of parental notice of termination of pregnancy] as expeditiously as possible and no later than 10 days from the filing of the notice of appeal."  Fla. R. App. P. 9.110(n).

Under the Act, if the court finds "evidence of child abuse or sexual abuse of the minor petitioner by any person, the court [must] report the evidence of child abuse or sexual abuse of the petitioner, as provided in s. 39.201."  § 390.01114(4)(d).  Section 39.201 provides that "[a]ny person...who knows, or has reasonable cause to suspect,

that a child is abused...by a parent, legal custodian, caregiver, or other person responsible for the child's welfare shall report such knowledge or suspicion to the [Department of Children and Families]."

Any violation of the Act by a physician "constitutes grounds for disciplinary action under s. 458.331 or s. 459.015."  § 390.01114(3)(c).  Such disciplinary action may lead to the revocation or suspension of the physician's license to practice and/or to the imposition of administrative fines of up to $10,000 for each violation.  On its face, the Act does not contain any *scienter* or *mens rea* requirement for violations.

B.

The plaintiffs ("Plaintiffs") are two physicians and four clinics that provide reproductive health care services in Florida, including abortions.  They seek a preliminary injunction blocking enforcement of the Act on the grounds that the Act infringes upon the constitutional rights of both physicians who provide abortions and minors who seek abortions.  For purposes of their motion for preliminary injunction, Plaintiffs contend that the Act: (1) violates the due process rights of physicians because the provision regarding disciplinary action lacks a *scienter* requirement; (2) is unconstitutionally vague in that it fails to define what constitutes a physician's "reasonable effort" to effect notice; (3) is unconstitutionally vague in that it fails to give physicians adequate guidance about when the medical emergency provision applies; (4) impermissibly burdens the right of minors to seek an abortion by failing to contain any deadlines for resolution of appeals from a dismissal of a bypass petition; (5) violates minors' right to travel by failing to provide a venue for non-resident minors seeking abortions in Florida; and (6) impermissibly burdens the right of minors to confidentially

and anonymously seek an abortion by requiring the court to report evidence of sexual

abuse.

C.

Although the Supreme Court has held that parents may not exercise "an

absolute, and possibly arbitrary, veto" over a minor's decision to terminate a pregnancy,

Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 90-91, 96 S. Ct.

2831, 49 L. Ed. 2d 788 (1976), "it has never challenged a State's reasonable judgment

that the decision should be made after notification to and consultation with a parent."

Hodgson v. Minnesota, 497 U.S. 417, 445, 110 S. Ct. 2926, 111 L. Ed. 2d 344 (1990)

(op. of Stevens, J., joined by O'Connor, J.).  Indeed, the Court has consistently

recognized that a state "furthers a constitutionally permissible end by encouraging an

unmarried pregnant minor to seek the help and advice of her parents in making the very

important decision whether or not to bear a child."  Danforth, 428 U.S. at 91; see also

H.L. v. Matheson, 450 U.S. 398, 410, 101 S. Ct. 1164, 67 L. Ed. 2d 388 (1981)

(observing that "constitutional interpretation has consistently recognized that the

parents' claim to authority in their own household to direct the rearing of their children is

basic in the structure of our society") (quoting Ginsberg v. New York, 390 U.S. 629, 639,

88 S. Ct. 1274, 20 L. Ed. 2d 195 (1968)); Hodgson, 497 U.S. at 484 (noting that "a

strong tradition of parental concern for the nurture and upbringing of their children...is

now established beyond debate as an enduring American tradition") (Kennedy, J.,

concurring in the judgment in part and dissenting in part) (internal quotation and citation

omitted).  As observed by the Court in Bellotti v. Baird, 443 U.S. 622, 99 S. Ct. 3035, 61

L. Ed. 2d 797 (1979) (considering the constitutionality of a statute requiring parental

*consent* to abortion):

> [D]eeply rooted in our Nation's history and tradition, is the
> belief that the parental role implies a substantial measure of
> authority over one's children.  Indeed, "constitutional
> interpretation has consistently recognized that the parents'
> claim to authority in their own household to direct the rearing
> of their children is basic in the structure of our society."
> Properly understood, then, the tradition of parental authority
> is not inconsistent with our tradition of individual liberty;
> rather, the former is one of the basic presuppositions of the
> latter.  Legal restrictions on minors, especially those
> supportive of the parental role, may be important to the
> child's chances for the full growth and maturity that make
> eventual participation in a free society meaningful and
> rewarding.

Bellotti II, 443 U.S. at 638-39 (opinion of Powell, J.) (internal citation omitted).

In <u>Bellotti</u>, the Supreme Court struck down a statute requiring a minor to obtain

the *consent* of both parents before having an abortion, subject to a judicial bypass

provision, because the judicial bypass provision was too restrictive.  The <u>Bellotti</u> Court

explained that, to be constitutional, a parental consent statute must contain a bypass

provision that: (i) allows the minor to bypass the consent requirement if she establishes

that she is mature enough and well enough informed to make the abortion decision

independently; (ii) allows the minor to bypass the consent requirement if she establishes

that the abortion would be in her best interests; (iii) ensures the minor's anonymity; and

(iv) provides for expeditious bypass procedures.  <u>Id.</u> at 643-44 (plurality opinion).

Since <u>Bellotti</u>, the Supreme Court has addressed the constitutionality of parental

*notice* of abortion statutes in four cases.  In the first, <u>H.L. v. Matheson</u>, 450 U.S. at 398,

the Court held that, as applied to an unemancipated minor girl who was living with and

dependent upon her parents and who "made no claim or showing as to her maturity or

as to her relations with her parents," id. at 407, a Utah statute requiring physicians to

"notify, if possible," the parents or guardian of a minor upon whom an abortion is to be

performed was constitutional.  The Court explained that, "[a]lthough we have held that a

state may not constitutionally legislate a blanket, unreviewable power of parents to veto

their daughter's abortion, a statute setting out a 'mere requirement of parental notice'

does not violate the constitutional rights of an immature, dependent minor."  Id. at 409

(footnotes omitted); see also Planned Parenthood of Southeastern Penn. v. Casey, 505

U.S. 833, 895, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992) (noting that parental

notification statutes, "and our judgment that they are constitutional, are based on the

quite reasonable assumption that minors will benefit from consultation with their parents

and that children will often not realize that their parents have their best interest at

heart").

    Since Matheson, the Court has twice more upheld parental notice of abortion

statutes.  Lambert v. Wicklund, 520 U.S. 292, 117 S. Ct. 1169, 127 L. Ed. 2d 464

(1997); Ohio v. Akron Center for Reproductive Health, 497 U.S. 502, 510-11, 110 S. Ct.

2972, 111 L. Ed. 2d 405 (1990).  In each of these cases, the challenged statute

included a *Bellotti* bypass procedure, and the Court sustained the statutes on the

grounds that a notice statute satisfying the requirements of a consent statute

necessarily satisfies the requirements that might exist for a mere notice statute.

    In Akron, the Court reversed a Sixth Circuit decision invalidating an Ohio statute

requiring a physician to provide "at least twenty-four hours actual notice...to one of the

woman's parents...of his intention to perform the abortion."  Ohio Rev. Code §

2919.12(B)(1)(a)(i).  Under the Ohio law, if the physician cannot give the notice "after a

reasonable effort," he may perform the abortion after "at least forty-eight hours constructive notice."  Ohio Rev. Code § 2919.12(B)(2).  A woman may bypass the notice requirement if she is able to prove by clear and convincing evidence that: (1) she is "sufficiently mature and well enough informed to intelligently decide whether to have an abortion without the notification of her parents, guardian, or custodian;" (2) "one or both of her parents, her guardian, or her custodian was engaged in a pattern of physical, sexual, or emotional abuse against her;" or (3) "the notification of her parents, guardian, or custodian otherwise is not in her best interest."  Ohio Rev. Code § 2151.85(A)(4).  The Sixth Circuit found that the Ohio law had a number of constitutional defects, largely pertaining to the judicial bypass procedure.

In reversing, the Supreme Court held that the Ohio statute satisfied each of the four Bellotti requirements.  Because the statute's bypass provision satisfied the four Bellotti criteria required for bypass provisions in parental *consent* statutes, notice statutes being less onerous than consent statutes, the Court held that Ohio's notification statute *a fortiori* satisfied any criteria that might be required for bypass provisions in parental notification statutes.  The Court specifically declined to decide whether a parental notification statute *must* include some sort of bypass provision to be constitutional.  In concluding its Akron opinion, the Court wrote:

> It is both rational and fair for the State to conclude that, in most instances, the family will strive to give a lonely or even terrified minor advice that is both compassionate and mature.  The statute in issue here is a rational way to further those ends.  It would deny all dignity to the family to say that the State cannot take this reasonable step in regulating its health professions to ensure that, in most cases, a young woman will receive guidance and understanding from a parent.

Akron, 497 U.S. at 520.

In Lambert, the Court summarily reversed a Ninth Circuit decision that invalidated a Montana one-parent notice provision that, like the Ohio statute in Akron, included a Bellotti bypass provision. The Montana statute prohibits a physician from performing an abortion unless the physician gives at least 48 hours' actual notice to one parent or to the legal guardian of the pregnant minor, "unless actual notice is not possible after a reasonable effort," in which case "alternate notice" may be provided as provided by Montana law. Mont. Code Ann. § 50-20-204. The Montana law also provides that a court considering a judicial bypass petition must grant the petition and waive the notice requirement if it finds by clear and convincing evidence that any of the following three conditions are met: (i) the minor is "sufficiently mature to decide whether to have an abortion"; (ii) "there is evidence of a pattern of physical, sexual, or emotional abuse" of the minor by one of her parents, a guardian, or a custodian; or (iii) "the notification of a parent or guardian is not in the best interests of the [minor]." §§ 50-20-212(4), (5). The Ninth Circuit struck down the Montana law as unconstitutional because the third condition--allowing waiver if the court determines that notification is not in the minor's best interests, rather than if the court determines that the abortion is in the minor's best interests--was too narrow.

In reversing the Ninth Circuit, the Supreme Court noted that the Montana statute is indistinguishable in any relevant way from the Ohio statute upheld in Akron. Both statutes allow for a judicial bypass if a minor shows that parental *notification* is not in her best interests. The Court observed that, in Akron, it had considered whether such a provision meets the Bellotti requirement that a minor be allowed to show that "the

desired *abortion* would be in her best interests." Bellotti, 443 U.S. at 444.  Having

explicitly held that it did, 497 U.S. at 511, the Court found the Ninth Circuit's decision

striking down the Montana statute inconsistent with its prior precedents.

In Hodgson v. Minnesota, 497 U.S. 417, 110 S. Ct. 2926, 111 L. Ed. 2d 344

(1990), the Supreme Court addressed the constitutionality of a Minnesota law that

required both parents to be notified of a minor's decision to obtain an abortion.  A

majority of the Court concluded that, in the absence of a judicial bypass provision, the

two-parent notification requirement was unconstitutional.  Interestingly, the Minnesota

statute provided that, if the two-parent notification provision were enjoined, a new two-

parent provision, identical to the original except for the addition of a judicial bypass

procedure, would go into effect.  A different majority of the Hodgson Court held that the

two-parent notification requirement, *with* a bypass provision, was constitutional.  See

Planned Parenthood of Blue Ridge v. Camblos, 155 F.3d 352, 364 (4th Cir.1998)

(describing the Court's opinion in Hodgson as "so fractured as to render its opinions

collectively all but impenetrable"), cert. denied, 525 U.S. 1140, 119 S. Ct. 1031, 143 L.

Ed. 2d 40 (1999).[3]

----

[3]  The Court's "fractured" opinions in Hodgson and Akron, decided the same day,
prompted Justice Scalia to canvas the Court's actions in those two cases as follows:

> One Justice holds that two-parent notification is unconstitutional (at least
> in the present circumstances) without judicial bypass, but constitutional
> with bypass; four Justices would hold that two-parent notification is
> constitutional with or without bypass; four Justices would hold that
> two-parent notification is unconstitutional with or without bypass, though
> the four apply two different standards; six Justices hold that one-parent
> notification with bypass is constitutional, though for two different sets of
> reasons; and three Justices would hold that one-parent notification with
> bypass is unconstitutional.

D.

The traditional standard for evaluating a facial challenge to a law was set forth in

United States v. Salerno, 481 U.S. 739, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987),

where the Supreme Court explained that "[a] facial challenge to a legislative Act is, of

course, the most difficult challenge to mount successfully, since the challenger must

establish that *no set of circumstances* exists under which the Act would be valid."  481

U.S. at 745 (emphasis added).  In Casey, however, the Supreme Court never

mentioned the Salerno "no set of circumstances" standard when it held that a

Pennsylvania statute regulating abortion was facially invalid.  A plurality of the Justices

in Casey agreed that a law having "the purpose or effect of placing a substantial

obstacle in the path of a woman seeking an abortion of a nonviable fetus" places an

unconstitutional "undue burden" on the exercise of her right to choose an abortion.  505

U.S. at 877.  A majority of the Casey Court applied that standard--an "undue burden"

standard--to determine that the Pennsylvania abortion regulation was facially invalid

because "in a large fraction of the cases in which [the law] is relevant, it will operate as

a substantial obstacle to a woman's choice to undergo an abortion," thus imposing an

"undue burden."  505 U.S. at 895.  In a case decided after Casey, again without

mentioning the Salerno "no set of circumstances" standard, the Court declared

Nebraska's partial-birth abortion ban facially unconstitutional because it imposed an

undue burden on a woman's decision to have an abortion of a nonviable fetus.

---

Hodgson, 497 U.S. at 479-80 (citations omitted) (Scalia, J., concurring in the judgment
in part and dissenting in part).

Stenberg v. Carhart, 530 U.S. 914, 921, 120 S. Ct. 2597, 147 L. Ed. 2d 743 (2000).[4]

Since Casey, the majority of circuit courts have concluded that Salerno does not govern facial challenges to abortion regulations.  Carhart v. Gonzales, __ F.3d __, 2005 WL 1592942, at *2 (8th Cir. July 8, 2005); Richmond Med. Ctr. for Women v. Hicks, 409 F.3d 619, 627-28 (4th Cir.2005); Heed, 390 F.3d at 58-9; Planned Parenthood of Idaho, Inc. v. Wasden, 376 F.3d 908, 921 (9th Cir. 2004), cert. denied, 125 S. Ct. 1694, 161 L. Ed. 2d 524 (2005); A Woman's Choice--E. Side Women's Clinic v. Newman, 305 F.3d 684, 688 (7th Cir.2002), cert. denied, 537 U.S. 1192, 123 S. Ct. 1273, 154 L. Ed. 2d 1026 (2003); Planned Parenthood of the Rocky Mountains Servs., Corp. v. Owens, 287 F.3d 910, 919 (10th Cir.2002); Planned Parenthood of Cent. New Jersey v. Farmer, 220 F.3d 127, 142 (3d Cir.2000); Women's Med. Prof'l Corp. v. Voinovich, 130 F.3d 187, 193 (6th Cir.1997), cert. denied, 523 U.S. 1036, 118 S. Ct. 1347, 140 L. Ed. 2d 496 (1998).  In the Fifth Circuit, at least one panel has held that Salerno, not Casey, applies to facial challenges to abortion laws.  Barnes v. Moore, 970 F.2d 12, 14 n. 2 (5th Cir.1992) (applying Salerno to uphold Mississippi's Informed Consent to Abortion Act and stating that Casey did not overrule Salerno).  In a more recent case, without mentioning Salerno, another Fifth Circuit panel applied the Casey undue-burden standard to strike down a Louisiana abortion statute.  Sojourner T v. Edwards, 974 F.2d 27 (5th Cir.1992).  In subsequent cases, the Fifth Circuit has declined to address "any

_____

[4] Despite the Supreme Court's application of the undue burden standard in Casey and Stenberg, it has never explicitly addressed the undue-burden standard's tension with Salerno's no-set-of-circumstances standard.  On May 23, 2005, the Court granted certiorari in Planned Parenthood of N. New England v. Heed, 390 F.3d 53 (1st Cir. 2004), cert. granted, 125 S. Ct. 2294 (May 23, 2005), in part to address the question regarding the appropriate standard to be applied in the abortion context.

internal inconsistency" in this area of Fifth Circuit jurisprudence.  Okpalobi v. Foster, 190
F.3d 337, 354 (5th Cir.1999) (declining to resolve the Casey/Salerno standard of proof
question because the statute in question failed under either test); Causeway Medical
Suite v. Ieyoub, 109 F.3d 1096, 1104 (5th Cir.1997) (same).  As yet, the Eleventh
Circuit has not weighed in on the issue.

Without guidance from the Eleventh Circuit, and without a definitive answer to the
question currently before the Supreme Court on certiorari review, namely whether
Salerno still applies in the abortion context, this court will do what the majority of circuit
courts have done and will follow what the Supreme Court actually did in Casey.

II.  ANALYSIS

A.

In applying the Casey standard, this court must determine whether the *purpose*
or *effect* of the challenged law is to place a substantial obstacle in the path of a woman
seeking an abortion.  See  Casey, 505 at 878 (explaining that "[a]n undue burden exists,
and therefore a provision of law is invalid, if its purpose or effect is to place a substantial
obstacle in the path of a woman seeking an abortion before the fetus attains viability").
Although the Casey Court provided little, if any, guidance regarding the inquiry courts
should undertake to determine whether a regulation has the "purpose" of imposing an
undue burden on a woman's right to seek an abortion, the Supreme Court in other
contexts has instructed that "[a] court's finding of improper purpose behind a statue is
appropriately determined by the statute on its face, its legislative history, or its
interpretation by a responsible administrative agency."  Edwards v. Aguillard, 482 U.S.
578, 594, 107 S. Ct. 2573, 96 L. Ed. 2d 510 (1986).

When enacting the statute challenged in this case, a statute all but duplicative of statutes previously upheld by the Supreme Court, the Florida Legislature expressed its purpose to encourage "unmarried pregnant minors to seek the help and advice of their parents in making the important decision whether or not to bear a child" and to "protect the fundamental right of parents to raise their children free from unnecessary government interference."  H.B. 1659, 107th Reg. Sess. (Fla. 2005).  On its face, the Act is consistent with the Legislature's purpose.  The Act is also consistent with (a) the Legislature's long-recognized commitment to the welfare of families and children, see, e.g., Fla. Stat. § 39.001(1)(b) (among other things, the purpose of Florida's child welfare system is "[t]o preserve and strengthen the child's family ties whenever possible," and "[t]o recognize that most families desire to be competent caregivers and providers for their children and that children achieve their greatest potential when families are able to support and nurture the growth and development of their children"); (b) with the mandate from the overwhelming majority of Florida voters who approved the 2004 amendment to the Florida Constitution, thereby expressing their desire to have a role in protecting and guiding the healthcare choices of their minor children when faced with the difficult challenges surrounding abortion issues; and (c) with both the United States Supreme Court's and the Florida Supreme Court's express recognition of the State's interest in promoting meaningful family relationships.  See, e.g., Troxel v. Granville, 530 U.S. 57, 66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (recognizing that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children"); Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)

(discussing "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child"); Parham v. J. R., 442 U.S. 584, 602, 99 S. Ct. 2493, 61 L. Ed. 2d 101 (1979) (noting that "[o]ur jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children"); Quilloin v. Walcott, 434 U.S. 246, 255, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978) (noting that "[w]e have recognized on numerous occasions that the relationship between parent and child is constitutionally protected"); Wisconsin v. Yoder, 406 U.S. 205, 232, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972) (stating that "[t]he history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children" and "[t]his primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition");; Fla. Dep't of Children and Families v. F.L., 880 So.2d 602 (Fla. 2004) (recognizing that "[p]arents have a fundamental liberty interest, protected by both the Florida and federal constitutions, in determining the care and upbringing of their children"); S.B. v. Department of Children & Families, 851 So.2d 689, 691 (Fla. 2003) (noting that "there is a constitutionally protected interest in preserving the family and raising one's children"). Quite simply, the court finds that the Florida Legislature enacted the Parental Notice of Abortion Act for proper and not improper purposes.

B.

Notwithstanding the Legislature's purpose, Plaintiffs contend that the effect of the Act is to impermissibly burden a minor's right to obtain an abortion because the Act fails to provide an expeditious bypass proceeding.  In particular, Plaintiffs contend that the Act is unconstitutional because the statute contains no deadlines by which a minor's

appeal from a denial of a bypass petition must be decided.  The statute simply provides

that "[a]n expedited appeal shall be available, as the Supreme Court provides by rule."

§ 390.01114(4)(f).

At the time Plaintiffs made this argument in their memorandum of law in support

of their motion for preliminary injunction, the Florida Supreme Court had not yet issued

its amended Rule of Appellate Procedure 9.110, which covers appeal of an order

denying a petition for judicial waiver.  Before the parties appeared for oral argument,

the Florida Supreme Court amended the appellate rules to provide that a "district court

of appeal shall render its decision on the appeal [of an order dismissing a petition for

judicial waiver of parental notice] as expeditiously as possible and no later than 10 days

from the filing of the notice of appeal."  Fla. R. App. P. 9.110(n).  At oral argument,

counsel did not reiterate Plaintiffs' argument regarding the lack of appellate deadlines.

While Plaintiffs may have abandoned this argument given the Florida Supreme

Court's amendment of the appellate rules, the Court nonetheless notes that Florida's

Act provides a bypass procedure that is every bit as expeditious as procedures that

were upheld by the Supreme Court in Akron.  In Akron, the Court upheld an Ohio

statute that requires the trial court to make its waiver decision within five "business

days" after the minor files her bypass petition, requires the court of appeals to docket an

appeal within four "days" after the minor files a notice of appeal, and requires the court

of appeals to render a decision within five "days" after docketing.  Against an argument

that Ohio's bypass procedure could take up to 22 calendar days, assuming that the

Ohio Legislature meant for all of the references to "days" to mean "business days," the

Supreme Court wrote: "[U]nder our precedents, the mere possibility that the procedure

may require up to 22 days in a rare case is plainly insufficient to invalidate the statute on its face." Akron 497 U.S. at 514 (also suggesting that an interpretation of the term "days," as used in the statute's provision regarding the appellate court's responsibilities, to mean business days instead of calendar days "seems inappropriate and unnecessary because of the express and contrasting use of 'business days' in [the statute's provision regarding the trial court's responsibilities]"); see also Planned Parenthood Ass'n of Kansas City, Mo., Inc. v. Ashcroft, 462 U.S. 476, 103 S. Ct. 2517, 76 L. Ed. 2d 733 (1983) (upholding a Missouri statute that could require 17 calendar days plus a sufficient time for deliberation and decision-making at both the trial and appellate levels); Planned Parenthood Ass'n of the Atlanta Area, Inc. v. Miller, 934 F.2d 1462, 1482 (11th Cir. 1991) (rejecting the plaintiff's lack of expediency argument, stating that "the mere possibility that a court will utilize all the time allotted to it by the legislature, and thereby extend the petition procedure to nineteen days, would be insufficient to invalidate the [Georgia Parental Notification Act] on its face").

In this case, under a worst case scenario, a Florida circuit court might take 48 hours to rule on a bypass petition (the petition is deemed granted if the circuit court fails to decide within 48 hours), and a district court of appeal might take ten (10) days to render its decision on an appeal of an order denying a bypass petition.  Clearly, these deadlines do not offend the Bellotti requirement that courts conduct a bypass procedure with expedition (at least in the parental *consent* context).  They also do not result in a delay sufficient to warrant invalidating the Florida Act on its face.

C.

Plaintiffs argue that the Act's mandatory reporting requirement places an undue

burden on a minor's right to seek an abortion because it breaches the minor's confidentiality and potentially creates a chilling effect on the minor's decision to seek a bypass and/or an abortion.  As Plaintiffs point out, the Act requires the circuit court in a bypass case to report "evidence of child abuse or sexual abuse of the minor petitioner by *any person*" to the Department of Children and Families ("DCF").  § 390.01114(4)(d) (emphasis added).  The Act defines "sexual abuse of a child" to mean, among other things, "[a]ny penetration, however slight of the vagina...of one person by the penis of another person."  §§ 390.0114(2)(e), 39.01(63).  A "child" is "any unmarried person under the age of 18 years who has not been emancipated by order of the court."  § 39.01(12).  Because a minor who seeks a judicial bypass has been the victim of "sexual abuse" by definition, Plaintiffs suggest that the Act requires the circuit court to report every bypass case that comes before it, whether the minor's sexual partner was a rapist, an abusive parent, or an under-age boyfriend with whom the child had consensual sex.  Plaintiffs argue that the reporting requirement is unconstitutional because it could force a minor to choose between seeking a bypass on the one hand and, on the other hand, having her anonymity compromised and/or having her boyfriend reported to DCF.

At oral argument, counsel for the State of Florida questioned Plaintiffs' interpretation of the statute.  As the State's counsel correctly noted, the statute qualifies the court's reporting requirement by adding the phrase "as provided in s. 39.201." Because section 39.201 limits mandatory reporting to instances involving abuse of a child "by a parent, legal custodian, caregiver, or other person responsible for the child's welfare," defense counsel suggested that the Legislature could not have intended, and

the State has not construed, the statute to mean that a circuit court must report *every*

bypass case, even those involving consensual sex between minors.

Whether the circuit court is required to report *all* bypass cases or not, it is

important to note that a state is required to take reasonable steps to prevent the *public*

from learning the identity of a minor seeking an abortion.  See e.g., Akron, 497 U.S. at

513 (explaining that a judicial bypass provision must encompass "reasonable steps to

prevent the public from learning of the minor's identity"); Bellotti, 443 U.S. at 655

(stating that "it is inherent in the right to make the abortion decision that the right may be

exercised without public scrutiny") (J. Stevens, concurring).  That some public officials

may have access to bypass records is not necessarily fatal to a bypass provision.

Akron, 497 U.S. at 513 (refusing "to base a decision on the facial validity of a statute on

the mere possibility of unauthorized, illegal disclosure by state employees); Miller, 934

F.2d at 1479 (11th Cir. 1991) (explaining that "[t]he fact that some public officials have

access to the minor's court record does not compromise the record's confidentiality, nor

does it mean that they will make unauthorized disclosures of it").

In this case, the Florida Legislature has taken considerable care to assure the

anonymity of a child seeking a bypass of the parental notification requirement.  Apart

from the reporting requirement, the Act provides (a) that a bypass petition may be filed

under a pseudonym or through the use of initials, § 390.01114(4)(a); (b) that "[a]ll

hearings under [the bypass provision], including appeals, shall remain confidential and

closed to the public, as provided by court rule," § 390.01114(4)(e); and (c) that circuit

court records pertaining to a bypass proceeding, including written transcripts, factual

findings and legal conclusions, be maintained as confidential records "as required by s.

390.01116." § 390.01114(4)(e).  Under section 390.01116, all records that could be used to identify a minor seeking a bypass are confidential and exempt from Florida's public records laws.  By rule, (a) bypass hearings "shall be closed to the public and all records thereof shall remain confidential, Fla. R. Juv. P. 8.820(e); and (b) "any information including the petition, documents, transcripts, recordings of cases, and any other information that could be used to identify a minor who has petitioned the court for a judicial waiver of parental notice of termination of pregnancy is confidential and exempt from section 119.07(1), Florida Statutes, and section 24(a), Article I of the State Constitution."  Fla. R. Juv. P. 8.835.

      To the extent the reporting requirement causes a circuit court to provide evidence of child abuse or sexual abuse of a petitioner to DCF, any information received by DCF is required to be kept confidential under section 39.202(1).[5]  Should a DCF employee knowingly or willfully make public any of the confidential information contained in the bypass records the DCF receives, that employee is guilty of a misdemeanor of the second degree.  § 39.205(3).  Should DCF be required under section 39.201 to report any information received from the court to law enforcement, the identity of the victim of *any* sexual offense is exempt from public disclosure.  § 119.07(6)(f).[6]

_____

      [5]  Section 39.202(1) provides that "[i]n order to protect the rights of the child and the child's parents or other persons responsible for the child's welfare, all records held by the department concerning reports of child abandonment, abuse, or neglect, including reports made to the central abuse hotline and all records generated as a result of such reports, shall be confidential and exempt from the provision of s. 119.07(1) and shall not be disclosed except as specifically authorized by this chapter."

      [6]  Section 119.07(6)(f) provides that "any criminal intelligence information or criminal investigative information or other criminal record, including those portions of court records and court proceedings, which may reveal the identity of a person who is a

On a facial challenge such as Plaintiffs bring here, this court will not assume that the Act's reporting requirement--however broadly it is construed--will result in disclosure of a minor's identity to the public.  The Florida Legislature has taken reasonable steps to avoid such a result; and, given those steps, the court finds it unlikely that a minor would be deterred from seeking a judicial bypass by the slim possibility that her anonymity would be compromised.  Furthermore, the court is not convinced that the reporting requirement is unconstitutional on its face because a minor might avoid the bypass procedure out of fear that her boyfriend might be reported to DCF.  It is not only  unclear that a minor would have to name her boyfriend during the course of a bypass proceeding;[7] it is also unclear that a circuit court in a bypass proceeding would have to report any and all evidence of a minor's consensual sex, or that DCF would do anything but ignore whatever evidence the court did report concerning a minor's consensual sex. Quite simply, Plaintiffs have not succeeded in establishing that they are likely to succeed on the merits with their reporting-requirement argument.  See Manning v. Hunt, 119 F.3d 254 (4th Cir. 1997) (rejecting a challenge to the constitutionality of a North Carolina bypass provision that required a judge in a bypass proceeding to report to the North Carolina Department of Social Services any evidence that a minor was the victim of incest or rape).

---

victim of any sexual offense, including a sexual offense proscribed in chapter 794, chapter 800, or chapter 827, is exempt from the provisions of subsection (1) and s. 24(a), Art. I of the State Constitution.

[7]  A minor, who may file under a pseudonym or initials, may seek a bypass on the basis that she "is sufficiently mature to decide whether to terminate her pregnancy."  § 390.01114(4)(c).

D.

Plaintiffs contend that, by failing to provide a venue for non-resident minors seeking an abortion in Florida to petition for a judicial bypass of the notice requirements, the Act impermissibly limits an out-of-state minor's accessibility to a bypass procedure in violation of her right to travel.  To be sure, while the Act specifies that "[a] minor *may* petition any circuit court in a judicial circuit within the jurisdiction of the District Court of Appeal in which she resides for a waiver of the notice requirements," § 390.01114(4)(a) (emphasis added), the Act is silent about a venue for non-resident minors who wish to have an abortion in Florida.[8]  The State contends that, in the absence of a specific venue provision in the Act, the general venue statute controls, allowing non-resident minors to petition any circuit court for a waiver.  See Lane v. Hemophilia of the Sunshine State, Inc., 793 So.2d 992, 994 (Fla. 2d DCA 2001)  (explaining that "[t]he general venue statute controls all actions brought...pursuant to a statute not containing specific provisions concerning venue") (citing Gaboury v. Flagler Hosp., Inc., 316 So.2d 642 (Fla. 4th DCA 1975).

The Act does not expressly prohibit non-residents from seeking an abortion in the State of Florida; nor does it expressly prohibit non-residents wanting to obtain an abortion in Florida from seeking a judicial bypass in Florida.  See Doe v. Bolton, 410 U.S. 179, 200, 93 S. Ct. 739, 751, 35 L. Ed. 2d 201 (1973) (holding unconstitutional the

---

[8]  In adopting a new rule regarding judicial waiver proceedings, the Florida Supreme Court changed the venue provision from permissive (the Legislature used the word "may") to mandatory: "Proceedings for a judicial waiver of parental notice of termination of pregnancy *shall* be commenced by the filing of a petition in any circuit court within the appellate district in which the petitioner resides as provided by section 390.01114(4)(a), Florida Statutes.  Fla. R. Juv. P. 8.805(a) (emphasis added).

provision in a Georgia abortion statute limiting abortions to Georgia residents); Indiana
Planned Parenthood Affiliates Ass'n, Inc. v. Pearson, 716 F.2d 1127, 1141-42 (7th Cir.
1983) (suggesting that, "if [the Indiana notification statute] barred out-of-state minors
from employing the judicial bypass procedure, it would be unconstitutional because the
effect would be to prohibit mature out-of-state minors from having abortions in Indiana").
It is axiomatic, moreover, that Florida's venue provisions neither confer nor eliminate a
court's jurisdiction.  Walters v. State of Florida, Dep't of Health & Rehabilitation Servs.,
332 So. 2d 684 (Fla. 1st DCA 1976) (explaining that "[v]enue is one thing; jurisdiction is
another").  Indeed, Plaintiffs do not maintain that Florida courts lack jurisdiction over
non-residents who wish to petition for a judicial bypass; nor has this court found
anything to suggest that the Florida Legislature has attempted to so limit the jurisdiction
of Florida courts.

For out-of-state minors, then, jurisdiction exists in the circuit courts to consider a
waiver petition.  No venue is specified, and no venue is preferred (there being no
opposing party to consider).  Accordingly, under Florida's general venue statute, it
appears that an out-of-state minor may petition for a waiver of the Act in any Florida
county.  Under the circumstances, the court finds the Act places no undue burden on
non-residents seeking a bypass and, therefore, no likelihood that Plaintiffs can succeed
in their challenge to the constitutionality of the Act based on its venue provision (or lack
thereof).

E.

The Florida Act provides that notice is not required if, "[i]n the physician's good
faith judgment, a medical emergency exists and there is insufficient time for the

attending physician to comply with the notification requirements."  Fla. Stat. §

390.01114(3)(b).  Plaintiffs contend that this medical emergency exception to the

notification requirement is unconstitutionally vague, in essence because a physician

"cannot know with certainty beforehand what amount of time it might take to comply with

the notice requirement or how the young woman's medical condition may proceed."

Compl. at ¶ 33.

 The Fourteenth Amendment, through its Due Process guarantee, proscribes laws

so vague that persons "of common intelligence must necessarily guess at [their]

meaning and differ as to [their] application." Smith v. Goguen, 415 U.S. 566, 572 n. 8,

94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974) (quoting Connally v. General Constr. Co., 269

U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926)).  A law is unconstitutionally vague if

it (1) fails to provide those targeted by the statute a reasonable opportunity to know

what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and

discriminatory enforcement.  Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.

Ct. 2294, 33 L. Ed. 2d 222 (1972).  "Mathematical certainty from our language,"

however, cannot be expected.  Grayned, 408 U.S. at 110; see also United States Civil

Serv. Comm'n v. National Ass'n of Letter Carriers, 413 U.S. 548, 578-79, 93 S. Ct.

2880, 37 L. Ed. 2d 796 (1973) (acknowledging that "there are limitations in the English

language with respect to being both specific and manageably brief, and it seems to us

that although the prohibitions may not satisfy those intent on finding fault at any cost,

they are set out in terms that the ordinary person exercising ordinary common sense

can sufficiently understand and comply with").

 Here, the Act permits a physician to proceed with an abortion if, "[i]n the

physician's good-faith clinical judgment, a medical emergency exists[9] and there is insufficient time for the attending physician to comply with the notification requirements." The physician's "medical emergency" and "insufficient time" determinations are inextricably intertwined because the nature of the medical emergency determines, in large part, how much time is available before a physician must medically intervene. Physicians routinely make medical emergency determinations; they must routinely determine--or estimate--the time constraints that may be imposed by a medical emergency; and they routinely make each of these determinations in their "good-faith clinical judgment."

The Act inserts one additional factor into the "medical emergency"/"insufficient time" calculus: how much time it might take for the physician to comply with the Act's notification requirements.  The Act requires a physician to give actual notice in person or by telephone at least 48 hours before performing an abortion.  If the physician is unable, after a reasonable effort, to reach a parent in person or by phone, he or she must provide constructive notice by mail, in which case delivery is deemed to have occurred after 72 hours have passed.  Because the Act does not require that a physician make reasonable effort to effect actual notice *before* he or she sends constructive notice to a minor's parent, a physician may start the 72-hour constructive

_____

[9]  The Florida Act defines "medical emergency" as "a condition that, on the basis of a physician's good faith clinical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate termination of her pregnancy to avert her death, or for which a delay in the termination of her pregnancy will create serious risk of substantial and irreversible impairment of a major bodily function."  Id. at 390.0114(2)(d).  In Casey, 505 U.S. at 880 (considering a Pennsylvania husband notification-of-abortion provision), the Supreme Court upheld (against a narrowness challenge) a virtually identical definition of "medical emergency."

notice clock running, then make a reasonable effort to reach a parent in person or by

phone.  The physician, in other words, has a reasonably-defined period of time (72

hours) to add to his "medical emergency"/"insufficient time" calculus, giving the

physician a reasonable opportunity to know the parameters shaping his or her conduct.

Because the "good-faith clinical judgment" standard is a familiar one to

physicians, because the medical emergency/time-to-intervene calculus is one with

which physicians are frequently faced, and because the Act's time parameters for giving

notice to a minor's parent are not open-ended, the Act's medical emergency provision

lays no "trap [for] the innocent by not providing fair warning."  Grayned v. City of

Rockford, 408 U.S. at 108.  Id.  Instead, in language that is--perhaps--as definite as

language can be in the medical emergency context, the Act sets forth a standard with

which physicians should be not only familiar but also comfortable.  The court thus finds

that Plaintiffs are not likely to succeed with their argument that the Act's medical

emergency provision is unconstitutionally vague.  See Doe v. Bolton, 410 U.S. at 191-

92 (upholding against a vagueness challenge a requirement that the physician

determine, on the basis of his or her "best clinical judgment," that an abortion is

"necessary"); Planned Parenthood of Southeastern Pennsylvania v. Casey, 947 F.2d

682 (3d Cir. 1991) (rejecting a vagueness challenge to the definition of "medical

emergency" contained in Pennsylvania's abortion statute because the provision allowed

a physician to forgo the statute's requirements and perform an emergency abortion on

the basis of the physician's "good faith clinical judgment"), aff'd. in part and rev'd in part,

505 U.S. at 833.

F.

Plaintiffs contend that the Act is unconstitutionally vague because it fails to define what constitutes a "reasonable effort" to effect actual notice.  The term "reasonable" connotes an objective standard, a standard with which physicians, agencies regulating physicians, and courts are well acquainted.  See State v. N. Florida Women's Health & Counseling Servs., 852 So.2d 254 (Fla. 1st DCA 2001) (rejecting vagueness challenge to "reasonable effort" language in previous abortion notification act), quashed on Florida Constitutional grounds, 866 So. 2d 612 (2003).  The term is not vague and does not render the Act facially unconstitutional.

G.

Plaintiffs' final argument concerns the alleged lack of a *scienter* requirement in section 390.01114(3)(c), which provides that "[v]iolation of this subsection [requiring parental notice before inducing or performing an abortion] by a physician constitutes grounds for disciplinary action under s. 458.331 or s. 459.015."  The Florida Supreme Court rejected this same argument when it considered the identical provision in the current Act's predecessor.  State v. N. Florida Women's Health & Counseling Servs., 852 So.2d at 269.

While acknowledging that disciplinary action under sections 458.331 and 459.015 is penal in nature and, thus, must require *scienter* in order to be constitutional, the Florida Supreme Court construed both the medical practice acts and the prior Parental Notice of Abortion Act (§ 390.01115(3)(c)) as requiring the necessary *scienter*, namely knowledge.  Id. (citing Capital City Country Club, Inc. v. Tucker, 613 So. 2d 448, 452 (Fla. 1993) (stating that, "[i]f it is reasonably possible to do so, [the supreme court is] obligated to interpret statutes in such a manner as to uphold their constitutionality");

State v. Gale Distribs., 349 So. 2d 150, 153 (Fla. 1977) (explaining that "[the courts] ha[ve] a duty, if reasonably possible and consistent with constitutional rights, to resolve all doubts as to the validity of a statute in favor of its constitutionality and to construe it so as not to conflict with the Constitution")).  As noted by the supreme court, sections 458.331(1)(z) and 459.015(1)(dd) provide that physicians may be disciplined for "[p]rocuring, or aiding or abetting in the procuring of, an unlawful termination of pregnancy," but they do not "make physicians guarantors of their patients' truthfulness." Id. (explaining that the words "procure" and "aid or abet" signify more than innocent participation in an unlawful abortion).  Indeed, in the words of the supreme court, "[a] physician who acts reasonably does not become subject to discipline simply because a minor conceals facts or misleads the physician as to her age or some other pertinent fact." Id.  "Only if an abortion provider knew, or should have known, that the person seeking the abortion was a minor for whom notice had not been judicially waived or statutorily excused, can the provider be disciplined under the Act or the medical practice acts for performing the abortion." Id.

Because the Florida Supreme Court--construing language identical to that which now appears in the Parental Notice of Abortion Act--has determined that, as a matter of state law, *scienter* is required before physicians can be penalized under sections 458.331 and 459.015 for violations of section 390.01114(3), this court finds no constitutional infirmity in the penalty provision set out in section 390.01114(3)(c) of the Act.

III.

To succeed with their motion for preliminary injunction, Plaintiffs must

demonstrate, among other things, that they are likely to succeed on the merits of their

claims.  This they have not done.

Accordingly, it is ORDERED:

Plaintiffs' motion for temporary restraining order and/or for preliminary injunction

(doc. 2) is DENIED.

DONE AND ORDERED this July 18, 2005.


 /s William Stafford                                        
WILLIAM STAFFORD
SENIOR UNITED STATES DISTRICT JUDGE