UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


WOMANCARE OF ORLANDO, INC.; WOMANCARE
OF DAYTONA, INC.; RALPH L. BUNDY, M.D.;
PLANNED PARENTHOOD OF SOUTHWEST AND
CENTRAL FLORIDA, INC.; A JACKSONVILLE
WOMEN'S HEALTH CENTER, INC.; and EDWARD
R. WATSON, M.D.,

       Plaintiffs,

v.                                           4:05cv222-WS

JOHN O. AGWUNOBI, in his official capacity as
Secretary of the Florida Department of Health,

       Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION
FOR JUDGMENT ON THE PLEADINGS

       The plaintiffs in this case challenge, on its face, the Florida's Parental Notice of Abortion Act (the "Act"), signed into law on May 25, 2005, and codified at section 390.01114, Florida Statutes.  The Act went into effect on June 30, 2005, upon the adoption of rules and forms by the Florida Supreme Court.

       On June 23, 2005, the plaintiffs moved for a temporary restraining order.  The court held a hearing on July 7, 2005, at which time the parties argued their respective positions regarding the plaintiffs' motion for temporary restraining order.  At the

conclusion of the hearing, having determined that the plaintiffs were not likely to succeed on the merits of their claims, the court announced its decision to deny the motion.  A written order (doc. 32) followed.

Before the court at this time are the defendant's motion for judgment on the pleadings (doc. 36) and the plaintiffs' cross-motion for partial judgment on the pleadings (doc. 44).

I.

In its earlier order, the court provided an overview of the law and facts relevant to the claims in this case.  The court repeats that overview here, adding relevant discussion about the Supreme Court's most recent foray into the realm of abortion law.

A.

In 1999, the Florida Legislature passed a parental notification of abortion act that was challenged in court under the privacy provisions of the Florida Constitution.  In North Florida Women's Health and Counseling Services v. State, 866 So. 2d 612 (Fla. 2003), the Florida Supreme Court held that the 1999 act violated Florida's constitutional right to privacy.

In response to the Florida Supreme Court's decision in North Florida Women's Health and Counseling Services, the Florida Legislature proposed, and the voters ratified, a constitutional amendment authorizing the Florida Legislature, notwithstanding a minor's right to privacy under Florida law, to require notification to a parent or guardian before termination of a minor's pregnancy.  Specifically, the amendment provides as follows:

>The legislature shall not limit or deny the privacy right guaranteed to a minor under the United States Constitution as interpreted by the United States Supreme Court. Notwithstanding a minor's right of privacy provided in Section 23 of Article I, the Legislature is authorized to require by general law for notification to a parent or guardian of a minor before the termination of the minor's pregnancy. The Legislature shall provide exception to such requirement for notification and shall create a process for judicial waiver of the notification.

Fla. Const. art. X, § 22.

The 2005 Florida Legislature responded to the Florida voters' mandate by enacting the Act that is being challenged in this case.  In essence, the Act requires a physician to notify the parent or legal guardian of a minor at least 48 hours before performing an abortion on that minor.  Fla. Stat. § 390.01114(3)(a).  The physician must provide "actual notice"[1] unless "actual notice is not possible after a reasonable effort has been made," in which case "constructive notice"[2] must be given.  Id.  Notice is not required if: (1) "[i]n the physician's good-faith clinical judgment, a medical emergency exists and there is insufficient time for the attending physician to comply with the notification requirement;" (2) the parent or guardian waives notice in writing; (3) the minor is or has been married or has had the disability of nonage removed; (4) the minor

---

[1]  "Actual notice" means "notice that is given directly, in person or by telephone, to a parent or legal guardian of a minor, by a physician, at least 48 hours before the inducement or performance of a termination of pregnancy."  § 390.01114(2)(a).

[2]  "Constructive notice" means "notice that is given in writing, signed by the physician, and mailed at least 72 hours before the inducement or performance of the termination of pregnancy, to the last known address of the parent or legal guardian of the minor, by certified mail, return receipt requested, and delivery restricted to the parent or legal guardian."  For purposes of "constructive notice," delivery is deemed to have occurred after 72 hours have passed.  § 390.01114(2)(c).

has a minor dependent child; or (5) the minor has successfully petitioned a circuit court for a waiver of the notice requirement.  § 390.0114(3)(b).

To obtain a judicial waiver of the notice requirement, a minor "may petition any circuit court in a judicial circuit within the jurisdiction of the District Court of Appeal in which she resides." § 390.01114(4)(a) (emphasis added).  The Act does not define the term "resides;" nor does it expressly limit the availability of a judicial waiver to residents of the State of Florida.

The bypass provision gives the minor the right to court-appointed counsel, allows the minor to file her petition under a pseudonym or through the use of initials, and-- because the petition is deemed granted if the circuit court fails to rule within 48 hours after the petition is filed--guarantees expeditious handling of the petition by the circuit court.  § 390.01114(4)(a), (b).

The circuit court must dismiss the petition unless it finds (1) by clear and convincing evidence, that the minor "is sufficiently mature to decide whether to terminate her pregnancy;" (2) by a preponderance of the evidence, that there "is evidence of child abuse or sexual abuse of the petitioner by one or both of her parents or her legal guardian;" or (3) by a preponderance of the evidence, that "the notification of a parent or guardian is not in the best interest of the petitioner." § 390.01114(4)(c), (d).

"An expedited appeal shall be available, as the Supreme Court provides by rule, to any minor to whom the circuit court denies a waiver of notice." § 390.01114(4)(f).  On June 30, 2005, the Florida Supreme Court adopted an amendment to Florida Rule of

Appellate Procedure 9.110, which provides that a "district court of appeal shall render its decision on the appeal [of an order dismissing a petition for judicial waiver of parental notice of termination of pregnancy] as expeditiously as possible and no later than 10 days from the filing of the notice of appeal."  Fla. R. App. P. 9.110(n).

Under the Act, if the court finds "evidence of child abuse or sexual abuse of the minor petitioner by any person, the court [must] report the evidence of child abuse or sexual abuse of the petitioner, as provided in s. 39.201."  § 390.01114(4)(d).  Section 39.201 provides that "[a]ny person...who knows, or has reasonable cause to suspect, that a child is abused...by a parent, legal custodian, caregiver, or other person responsible for the child's welfare shall report such knowledge or suspicion to the [Department of Children and Families]."

Any violation of the Act by a physician "constitutes grounds for disciplinary action under s. 458.331 or s. 459.015."  § 390.01114(3)(c).  Such disciplinary action may lead to the revocation or suspension of the physician's license to practice and/or to the imposition of administrative fines of up to $10,000 for each violation.  On its face, the Act does not contain any *scienter* or *mens rea* requirement for violations.

B.

The plaintiffs ("Plaintiffs") are two physicians and four clinics that provide reproductive health care services in Florida, including abortions.  In their three-count complaint, they allege that the Act infringes upon the constitutional rights of both physicians who provide abortions and minors who seek abortions.  Specifically, they allege that the Act: (1) violates the due process rights of physicians because the

provision regarding disciplinary action lacks a *scienter* requirement; (2) is

unconstitutionally vague in that it fails to define what constitutes a physician's

"reasonable effort" to effect notice; (3) is unconstitutionally vague in that it fails to give

physicians adequate guidance about when the medical emergency provision applies; (4)

impermissibly burdens the right of minors to seek an abortion by failing to contain any

deadlines for resolution of appeals from a dismissal of a bypass petition;[3] (5) violates

minors' right to travel by failing to provide a venue for non-resident minors seeking

abortions in Florida;[4] (6) impermissibly restricts venue for judicial bypass petitions filed

by in-state minors to the district in which the minor resides; and (7) impermissibly

burdens the right of minors to confidentially and anonymously seek an abortion by

requiring the court to report evidence of sexual abuse.

C.

Although the Supreme Court has held that parents may not exercise "an

absolute, and possibly arbitrary, veto" over a minor's decision to terminate a pregnancy,

Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 90-91, 96 S. Ct.

2831, 49 L. Ed. 2d 788 (1976), "it has never challenged a State's reasonable judgment

that the decision should be made after notification to and consultation with a parent."

Hodgson v. Minnesota, 497 U.S. 417, 445, 110 S. Ct. 2926, 111 L. Ed. 2d 344 (1990)

---

[3]  Plaintiffs no longer seek facial invalidation of the Act on the ground that it fails to provide a time frame for appeals of denials of judicial waivers and, therefore, do not oppose the defendant's motion as to this claim.

[4]  Plaintiffs do not oppose the defendant's motion for judgment on the pleadings as to this claim.

(op. of Stevens, J., joined by O'Connor, J.).  Indeed, the Court has consistently

recognized that a state "furthers a constitutionally permissible end by encouraging an

unmarried pregnant minor to seek the help and advice of her parents in making the very

important decision whether or not to bear a child."  Danforth, 428 U.S. at 91; see also

H.L. v. Matheson, 450 U.S. 398, 410, 101 S. Ct. 1164, 67 L. Ed. 2d 388 (1981)

(observing that "constitutional interpretation has consistently recognized that the

parents' claim to authority in their own household to direct the rearing of their children is

basic in the structure of our society") (quoting Ginsberg v. New York, 390 U.S. 629, 639,

88 S. Ct. 1274, 20 L. Ed. 2d 195 (1968)); Hodgson, 497 U.S. at 484 (noting that "a

strong tradition of parental concern for the nurture and upbringing of their children...is

now established beyond debate as an enduring American tradition") (Kennedy, J.,

concurring in the judgment in part and dissenting in part) (internal quotation and citation

omitted).  As observed by the Court in Bellotti v. Baird, 443 U.S. 622, 99 S. Ct. 3035, 61

L. Ed. 2d 797 (1979):

> [D]eeply rooted in our Nation's history and tradition, is the
> belief that the parental role implies a substantial measure of
> authority over one's children.  Indeed, "constitutional
> interpretation has consistently recognized that the parents'
> claim to authority in their own household to direct the rearing
> of their children is basic in the structure of our society."
> Properly understood, then, the tradition of parental authority
> is not inconsistent with our tradition of individual liberty;
> rather, the former is one of the basic presuppositions of the
> latter.  Legal restrictions on minors, especially those
> supportive of the parental role, may be important to the
> child's chances for the full growth and maturity that make
> eventual participation in a free society meaningful and
> rewarding.

Bellotti, 443 U.S. at 638-39 (op. of Powell, J.) (internal citation omitted).

In Bellotti, the Supreme Court struck down a statute requiring a minor to obtain

the *consent* of both parents before having an abortion, subject to a judicial bypass

provision, because the judicial bypass provision was too restrictive.  The Bellotti Court

explained that, to be constitutional, a parental consent statute must contain a bypass

provision that: (i) allows the minor to bypass the consent requirement if she establishes

that she is mature enough and well enough informed to make the abortion decision

independently; (ii) allows the minor to bypass the consent requirement if she establishes

that the abortion would be in her best interests; (iii) ensures the minor's anonymity; and

(iv) provides for expeditious bypass procedures.  Id. at 643-44 (plurality opinion).

Since Bellotti, the Supreme Court has addressed the constitutionality of parental

*notice* statutes in four cases.  In the first, H.L. v. Matheson, the Court held that, as

applied to an unemancipated minor girl who was living with and dependent upon her

parents and who "made no claim or showing as to her maturity or as to her relations

with her parents," a Utah statute requiring physicians to "notify, if possible," the parents

of a minor upon whom an abortion was to be performed was constitutional.  450 U.S. at

407.  The Court explained that, "[a]lthough we have held that a state may not

constitutionally legislate a blanket, unreviewable power of parents to veto their

daughter's abortion, a statute setting out a 'mere requirement of parental notice' does

not violate the constitutional rights of an immature, dependent minor."  Id. at 409

(footnotes omitted); see also Planned Parenthood of Southeastern Penn. v. Casey, 505

U.S. 833, 895, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992) (noting that "our judgment that

[parental notification statutes] are constitutional [is] based on the quite reasonable assumption that minors will benefit from consultation with their parents and that children will often not realize that their parents have their best interest at heart").

Since Matheson, the Court has twice more upheld parental notice of abortion statutes.  Lambert v. Wicklund, 520 U.S. 292, 117 S. Ct. 1169, 127 L. Ed. 2d 464 (1997); Ohio v. Akron Center for Reproductive Health, 497 U.S. 502, 510-11, 110 S. Ct. 2972, 111 L. Ed. 2d 405 (1990).  In each of these cases, the challenged statute included a *Bellotti* bypass procedure, and the Court sustained the statutes on the grounds that a notice statute satisfying the requirements of a consent statute necessarily satisfies the requirements that might exist for a mere notice statute.

In Akron, the Court reversed a Sixth Circuit decision invalidating an Ohio statute requiring a physician to provide "at least twenty-four hours actual notice...to one of the woman's parents...of his intention to perform the abortion."  Ohio Rev. Code § 2919.12(B)(1)(a)(i).  Under the Ohio law, if the physician cannot give the notice "after a reasonable effort," he may perform the abortion after "at least forty-eight hours constructive notice."  Ohio Rev. Code § 2919.12(B)(2).  A woman may bypass the notice requirement if she is able to prove by clear and convincing evidence that: (1) she is "sufficiently mature and well enough informed to intelligently decide whether to have an abortion without the notification of her parents, guardian, or custodian;" (2) "one or both of her parents, her guardian, or her custodian was engaged in a pattern of physical, sexual, or emotional abuse against her;" or (3) "the notification of her parents, guardian, or custodian otherwise is not in her best interest."  Ohio Rev. Code §

2151.85(A)(4). The Sixth Circuit found that the Ohio law had a number of constitutional defects, largely pertaining to the judicial bypass procedure.

In reversing, the Supreme Court held that the Ohio statute satisfied each of the four Bellotti requirements. Because the statute's bypass provision satisfied the four Bellotti criteria required for bypass provisions in parental *consent* statutes, notice statutes being less onerous than consent statutes, the Court held that Ohio's notification statute *a fortiori* satisfied any criteria that might be required for bypass provisions in parental notification statutes. The Court specifically declined to decide whether a parental notification statute *must* include some sort of bypass provision to be constitutional. In concluding its Akron opinion, the Court wrote:

> It is both rational and fair for the State to conclude that, in most instances, the family will strive to give a lonely or even terrified minor advice that is both compassionate and mature. The statute in issue here is a rational way to further those ends. It would deny all dignity to the family to say that the State cannot take this reasonable step in regulating its health professions to ensure that, in most cases, a young woman will receive guidance and understanding from a parent.

Akron, 497 U.S. at 520.

In Lambert, the Court summarily reversed a Ninth Circuit decision that invalidated a Montana one-parent notice provision that, like the Ohio statute in Akron, included a Bellotti bypass provision. The Montana statute prohibits a physician from performing an abortion unless the physician gives at least 48 hours' actual notice to one parent or to the legal guardian of the pregnant minor, "unless actual notice is not possible after a reasonable effort," in which case "alternate notice" may be provided as provided by

Montana law.  Mont. Code Ann. § 50-20-204.  The Montana law also provides that a

court considering a judicial bypass petition must grant the petition and waive the notice

requirement if it finds by clear and convincing evidence that any of the following three

conditions are met: (i) the minor is "sufficiently mature to decide whether to have an

abortion"; (ii) "there is evidence of a pattern of physical, sexual, or emotional abuse" of

the minor by one of her parents, a guardian, or a custodian; or (iii) "the notification of a

parent or guardian is not in the best interests of the [minor]."  §§ 50-20-212(4), (5).  The

Ninth Circuit struck down the Montana law as unconstitutional because the third

condition--allowing waiver if the court determines that notification is not in the minor's

best interests, rather than if the court determines that the abortion is in the minor's best

interests--was too narrow.

　　　　In reversing the Ninth Circuit, the Supreme Court noted that the Montana statute

is indistinguishable in any relevant way from the Ohio statute upheld in Akron.  Both

statutes allow for a judicial bypass if a minor shows that parental *notification* is not in her

best interests.  The Court observed that, in Akron, it had considered whether such a

provision meets the Bellotti requirement that a minor be allowed to show that "the

desired *abortion* would be in her best interests." Bellotti, 443 U.S. at 444.  Having

explicitly held that it did, 497 U.S. at 511, the Court found the Ninth Circuit's decision

striking down the Montana statute inconsistent with its prior precedents.

　　　　In Hodgson v. Minnesota, 497 U.S. 417, 110 S. Ct. 2926, 111 L. Ed. 2d 344

(1990), the Supreme Court addressed the constitutionality of a Minnesota law that

required both parents to be notified of a minor's decision to obtain an abortion.  A

majority of the Court concluded that, in the absence of a judicial bypass provision, the

two-parent notification requirement was unconstitutional.  Interestingly, the Minnesota

statute provided that, if the two-parent notification provision were enjoined, a new two-

parent provision, identical to the original except for the addition of a judicial bypass

procedure, would go into effect.  A different majority of the <u>Hodgson</u> Court held that the

two-parent notification requirement, *with* a bypass provision, was constitutional.  <u>See</u>

<u>Planned Parenthood of Blue Ridge v. Camblos</u>, 155 F.3d 352, 364 (4th Cir.1998)

(describing the Court's opinion in <u>Hodgson</u> as "so fractured as to render its opinions

collectively all but impenetrable"), <u>cert. denied</u>, 525 U.S. 1140, 119 S. Ct. 1031, 143 L.

Ed. 2d 40 (1999).[5]

D.

The traditional standard for evaluating a facial challenge to a law was set forth in

<u>United States v. Salerno</u>, 481 U.S. 739, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987),

---

[5]  The Court's "fractured" opinions in <u>Hodgson</u> and <u>Akron</u>, decided the same day, prompted Justice Scalia to canvas the Court's actions in those two cases as follows:

> One Justice holds that two-parent notification is unconstitutional (at least in the present circumstances) without judicial bypass, but constitutional with bypass; four Justices would hold that two-parent notification is constitutional with or without bypass; four Justices would hold that two-parent notification is unconstitutional with or without bypass, though the four apply two different standards; six Justices hold that one-parent notification with bypass is constitutional, though for two different sets of reasons; and three Justices would hold that one-parent notification with bypass is unconstitutional.

<u>Hodgson</u>, 497 U.S. at 479-80 (citations omitted) (Scalia, J., concurring in the judgment in part and dissenting in part).

where the Supreme Court explained that "[a] facial challenge to a legislative Act is, of

course, the most difficult challenge to mount successfully, since the challenger must

establish that *no set of circumstances* exists under which the Act would be valid."  481

U.S. at 745 (emphasis added).  In Casey, however, the Supreme Court never

mentioned the Salerno "no set of circumstances" standard when it held that a

Pennsylvania statute regulating abortion was facially invalid.  A plurality of the Justices

in Casey agreed that a law having "the purpose or effect of placing a substantial

obstacle in the path of a woman seeking an abortion of a nonviable fetus" places an

unconstitutional "undue burden" on the exercise of her right to choose an abortion.  505

U.S. at 877.  A majority of the Casey Court applied that standard--an "undue burden"

standard--to determine that the Pennsylvania abortion regulation was facially invalid

because "in a large fraction of the cases in which [the law] is relevant, it will operate as

a substantial obstacle to a woman's choice to undergo an abortion," thus imposing an

"undue burden."  505 U.S. at 895.  In a case decided after Casey, again without

mentioning the Salerno "no set of circumstances" standard, the Court declared

Nebraska's partial-birth abortion ban facially unconstitutional because it imposed an

undue burden on a woman's decision to have an abortion of a nonviable fetus.

Stenberg v. Carhart, 530 U.S. 914, 921, 120 S. Ct. 2597, 147 L. Ed. 2d 743 (2000).

Since Casey, the majority of circuit courts have concluded that Salerno does not

govern facial challenges to abortion regulations.  Carhart v. Gonzales, __ F.3d __, 2005

WL 1592942, at *2 (8th Cir. July 8, 2005); Richmond Med. Ctr. for Women v. Hicks, 409

F.3d 619, 627-28 (4th Cir.2005); Planned Parenthood of Idaho, Inc. v. Wasden, 376

F.3d 908, 921 (9th Cir. 2004), <u>cert. denied</u>, 125 S. Ct. 1694, 161 L. Ed. 2d 524 (2005); <u>A</u>

<u>Woman's Choice--E. Side Women's Clinic v. Newman</u>, 305 F.3d 684, 688 (7th

Cir.2002), <u>cert. denied</u>, 537 U.S. 1192, 123 S. Ct. 1273, 154 L. Ed. 2d 1026 (2003);

<u>Planned Parenthood of the Rocky Mountains Servs., Corp. v. Owens</u>, 287 F.3d 910,

919 (10th Cir.2002); <u>Planned Parenthood of Cent. New Jersey v. Farmer</u>, 220 F.3d 127,

142 (3d Cir.2000); <u>Women's Med. Prof'l Corp. v. Voinovich</u>, 130 F.3d 187, 193 (6th

Cir.1997), <u>cert. denied</u>, 523 U.S. 1036, 118 S. Ct. 1347, 140 L. Ed. 2d 496 (1998).  In

the Fifth Circuit, at least one panel has held that <u>Salerno</u>, not <u>Casey</u>, applies to facial

challenges to abortion laws.  <u>Barnes v. Moore</u>, 970 F.2d 12, 14 n. 2 (5th Cir.1992)

(applying <u>Salerno</u> to uphold Mississippi's Informed Consent to Abortion Act and stating

that <u>Casey</u> did not overrule <u>Salerno</u>).  In a more recent case, however, without

mentioning <u>Salerno</u>, another Fifth Circuit panel applied the <u>Casey</u> undue-burden

standard to strike down a Louisiana abortion statute.  <u>Sojourner T v. Edwards</u>, 974 F.2d

27 (5th Cir.1992).  In subsequent cases, the Fifth Circuit has declined to address "any

internal inconsistency" in this area of Fifth Circuit jurisprudence.  <u>Okpalobi v. Foster</u>, 190

F.3d 337, 354 (5th Cir.1999) (declining to resolve the <u>Casey</u>/<u>Salerno</u> standard of proof

question because the statute in question failed under either test); <u>Causeway Medical</u>

<u>Suite v. Ieyoub</u>, 109 F.3d 1096, 1104 (5th Cir.1997) (same).  As yet, the Eleventh

Circuit has not weighed in on the issue.

On May 23, 2005, the Supreme Court granted *certiorari* in <u>Ayotte v. Planned</u>

<u>Parenthood of N. New England</u>, 125 S. Ct. 2294, 161 L. Ed. 2d (2005).  In that case, a

doctor and three clinics challenged the New Hampshire parental notification statute,

alleging, among other things, that the statute was facially unconstitutional because it

failed to provide an exception for health or medical emergencies.  The district court

declared the statute unconstitutional and permanently enjoined its enforcement.  The

Court of Appeals for the First Circuit affirmed, addressing the standard for evaluating

facial challenges to statutes regulating abortions as follows:

> We agree . . . that the undue burden standard -- proposed as
> a standard "of general application" by the Casey plurality,
> Casey, 505 U.S. at 876, 112 S. Ct. 2791, and twice applied
> to abortion regulations by a majority of the Court, id. at 895,
> 112 S. Ct. 2791; 530 U.S. at 920, 120 S. Ct. 2597 --
> supersedes Salerno in the context of abortion regulation.
>
>     Complementing the general undue burden standard, the
> Supreme Court has also identified a specific and
> independent constitutional requirement that an abortion
> regulation must contain an exception for the preservation of
> a pregnant woman's health.

Planned Parenthood of N. New England v. Heed, 390 F.3d 53, 58 (1st Cir. 2004),

vacated, 126 S. Ct. 961 (2006).  In his petition for *certiorari*, the New Hampshire

Attorney General framed one of the questions presented for review as follows: "Did the

United States First Circuit Court of Appeals apply the correct standard in a facial

challenge to a statute regulating abortion when it ruled that the undue burden standard

cited in Planned Parenthood of S.E. Pa. v. Casey, 505 U.S. 833, 876-77 (1992) and

Stenberg v. Carhart, 530 U.S. 914, 921 (2000) applied rather than the 'no set of

circumstances' standard set forth in United States v. Salerno, 481 U.S. 739 (1987)?"

Pet. for *Certiorari*, available at 2005 WL 474024 (Feb. 22, 2005).

       On January 18, 2006, the Supreme Court decided Ayotte without clarifying or

even addressing the tension between <u>Casey</u> and <u>Salerno.</u>  <u>Ayotte v. Planned</u>

<u>Parenthood of N. New England</u>, 126 S. Ct. 961 (2006).  Justice O'Connor, writing for the

unanimous Court, explained the limits of the <u>Ayotte</u> decision as follows:

> We do not revisit our abortion precedents today, but rather address a question of remedy:  If enforcing a statute that regulates access to abortion would be unconstitutional in medical emergencies, what is the appropriate judicial response?  We hold that invalidating the statute entirely is not always necessary or justified, for lower courts may be able to render narrower declaratory and injunctive relief.

<u>Ayotte</u>, 126 S. Ct. at 964.

While avoiding the <u>Casey</u>/<u>Salerno</u> issue, the <u>Ayotte</u> Court reiterated an

established proposition: that "States unquestionably have the right to require parental

involvement when a minor considers terminating her pregnancy, because of their

'strong and legitimate interest in the welfare of [their] young citizens, whose immaturity,

inexperience, and lack of judgment may sometimes impair their ability to exercise their

rights wisely.'" <u>Ayotte</u>, 126 S. Ct. at 966 (quoting <u>Hodgson v. Minnesota</u>, 497 U.S. 417,

444-45, 110 S. Ct. 2926, 111 L. Ed. 2d 344 (1990) (op. of Stevens, J.)).  In a footnote,

the Court noted that (1) thirty-eight (38) states, including Florida, have parental

involvement laws that have explicit exceptions for health or medical emergencies; and

(2) four states, including New Hampshire, have laws that make no exception for minors'

health in an emergency.  Without distinguishing between the two types of statutes, the

Supreme Court stated: "[W]e have long upheld state parental involvement statutes like

the Act before us, and we cast no doubt on those holdings today."  <u>Ayotte</u>, 126 S. Ct. at

966.

The <u>Ayotte</u> Court also reiterated another well-established proposition: that "a State may not restrict access to abortions that are necessary, in appropriate medical judgment, for preservation of the life or health of the mother." <u>Ayotte</u>, 126 S. Ct. at 967 (internal quotation marks omitted).  New Hampshire did not dispute this proposition. Indeed, the State conceded that "it would be unconstitutional to apply the New Hampshire law in a manner that subjects minors to significant health risks." <u>Id.</u>  New Hampshire also did not take "real issue" with the factual basis of the litigation: that "[i]n some very small percentage of cases, pregnant minors, like adult women, need immediate abortions to avert serious and often irreversible damage to their health." <u>Id.</u> New Hampshire nonetheless argued that the First Circuit's blunt remedy -- invalidating the law in its entirety -- was unnecessary, that relief could be more finely drawn.  The Supreme Court agreed with New Hampshire's argument.  In the Court's words:

> Only a few applications of New Hampshire's parental notification statute would present a constitutional problem. So long as they are faithful to legislative intent, then, in this case the lower courts can issue a declaratory judgment and an injunction prohibiting the statute's unconstitutional application.

<u>Id.</u> at 969.  The Court accordingly vacated the First Circuit's judgment and remanded the case to the lower courts for further proceedings consistent with the Court's opinion.

### D.

Under Federal Rule of Civil Procedure 12(c), a party may move for a judgment on the pleadings after the pleadings are closed.   Entry of judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment on the merits

may be rendered based on the court's consideration of the substance of the pleadings and any judicially noticed facts.  Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir.1998).  In reviewing a motion for judgment on the pleadings, the court must accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party.  Id.; Ortega v. Christian, 85 F.3d 1521, 1524 (11th Cir. 1996). The Court may not enter judgment on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Hawthorne, 140 F.3d at 1370 (citations omitted).

Although there is no provision in Rule 12(c) for entry of partial judgment on the pleadings, the rule does not prohibit such a procedure.  Indeed, it is the practice of many judges to entertain motions for partial judgment on the pleadings, just as they entertain motions for partial summary judgment under Rule 56.  See Strigliabotti v. Franklin Resources, Inc., 398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005).

## II.

Here, the defendant has answered Plaintiffs' complaint, and the pleadings are accordingly closed.  The defendant has moved for judgment on the pleadings as to all claims raised in Plaintiffs' complaint, although--as Plaintiffs point out--there is no discussion in the defendant's motion regarding Plaintiffs' claim that the Act's venue provision places an undue burden on minors who reside in the State of Florida. Plaintiffs have moved for partial judgment on the pleadings, having conceded that judgment may be entered for the defendant as to two of Plaintiffs' claims: (1) that the Act violates a minor's Fourteenth Amendment rights "by failing to provide a time limit in

which appeals of denials of bypass petitions must be decided;" Compl. at ¶ 39(d); and

(2) that the Act violates the right to travel of minors who do not reside in Florida.  Compl.

at ¶ 41.  For purposes of the motions, the court has considered the substance of the

pleadings, the challenged Act, and the Act's legislative history.  For the reasons set out

below, the court finds that the defendant is entitled to partial judgment on the pleadings

as to all but one claim.

A.

Without guidance from the Eleventh Circuit, and without clarification from the

Supreme Court as to whether the Salerno standard still applies in the abortion context,

this court will do what the majority of circuit courts have done and will apply Casey's

undue burden standard.

In applying the Casey standard, this court must determine whether the purpose

or effect of the challenged law is to place a *substantial* obstacle in the path of a woman

seeking an abortion.  See Casey, 505 at 878.  Although the Casey Court provided little,

if any, guidance regarding the inquiry courts should undertake to determine whether a

regulation has the "purpose" of imposing an undue burden on a woman's right to seek

an abortion, the Supreme Court in other contexts has instructed that "[a] court's finding

of improper purpose behind a statute is appropriately determined by the statute on its

face, its legislative history, or its interpretation by a responsible administrative agency."

Edwards v. Aguillard, 482 U.S. 578, 594, 107 S. Ct. 2573, 96 L. Ed. 2d 510 (1986).

When enacting the statute challenged in this case, a statute all but duplicative of

statutes previously upheld by the Supreme Court, the Florida Legislature expressed its

purpose to encourage "unmarried pregnant minors to seek the help and advice of their parents in making the important decision whether or not to bear a child" and to "protect the fundamental right of parents to raise their children free from unnecessary government interference."  H.B. 1659, 107th Reg. Sess. (Fla. 2005).  On its face, the Act is consistent with the Legislature's purpose.  The Act is also consistent with (a) the Legislature's long-recognized commitment to the welfare of families and children, see, e.g., Fla. Stat. § 39.001(1)(b) (among other things, the purpose of Florida's child welfare system is "[t]o preserve and strengthen the child's family ties whenever possible," and "[t]o recognize that most families desire to be competent caregivers and providers for their children and that children achieve their greatest potential when families are able to support and nurture the growth and development of their children"); (b) with the mandate from the overwhelming majority of Florida voters who approved the 2004 amendment to the Florida Constitution, thereby expressing their desire to have a role in protecting and guiding the healthcare choices of their minor children when faced with the difficult challenges surrounding abortion issues; and (c) with both the United States Supreme Court's and the Florida Supreme Court's express recognition of the State's interest in promoting meaningful family relationships.  See, e.g., Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) (discussing "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child"); Parham v. J. R., 442 U.S. 584, 602, 99 S. Ct. 2493, 61 L. Ed. 2d 101 (1979) (noting that "[o]ur jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children");

Wisconsin v. Yoder, 406 U.S. 205, 232, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972) (stating

that "[t]he history and culture of Western civilization reflect a strong tradition of parental

concern for the nurture and upbringing of their children" and "[t]his primary role of the

parents in the upbringing of their children is now established beyond debate as an

enduring American tradition"); Fla. Dep't of Children and Families v. F.L., 880 So.2d 602

(Fla. 2004) (recognizing that "[p]arents have a fundamental liberty interest, protected by

both the Florida and federal constitutions, in determining the care and upbringing of

their children").  Quite simply, the court finds that the Florida Legislature enacted the

Parental Notice of Abortion Act for proper and not improper purposes.

B.

Notwithstanding the Legislature's legitimate overall purpose, Plaintiffs contend

that, among other things, the effect of the Act is to impermissibly burden a minor's right

to obtain an abortion because the Act's medical emergency provision is

unconstitutionally vague.  Under that provision, notice to a parent is not required if, "[i]n

the physician's good faith judgment, a medical emergency exists and there is

insufficient time for the attending physician to comply with the notification requirements."

Fla. Stat. § 390.01114(3)(b).  The provision is unconstitutionally vague, Plaintiffs argue,

because a physician "cannot know with certainty beforehand what amount of time it

might take to comply with the notice requirement or how the young woman's medical

condition may proceed."  Compl. at ¶ 33.  According to Plaintiffs, the provision thus "fails

to give adequate notice of when a physician may perform an abortion without parental

notice in a medical emergency."  Compl. at ¶ 43(b).

The Fourteenth Amendment, through its Due Process guarantee, proscribes laws so vague that persons "of common intelligence must necessarily guess at [their] meaning and differ as to [their] application." Smith v. Goguen, 415 U.S. 566, 572 n. 8, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974) (quoting Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926)).  A law is unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement.  Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972).  "Mathematical certainty from our language," however, cannot be expected.  Grayned, 408 U.S. at 110; see also United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, 413 U.S. 548, 578-79, 93 S. Ct. 2880, 37 L. Ed. 2d 796 (1973) (acknowledging that "there are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with").

Here, the Act defines "medical emergency" as "a condition that, on the basis of a physician's good faith clinical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate termination of her pregnancy to avert her death, or for which a delay in the termination of her pregnancy will create serious risk of substantial and irreversible impairment of a major bodily function."  Id. at 390.0114(2)(d).  As this court noted in its previous order (doc. 32 at 26), physicians

routinely make medical emergency determinations; they must routinely determine--or

estimate--the time constraints that may be imposed by a medical emergency; and they

routinely make each of these determinations in their "good-faith clinical judgment."

In <u>Casey</u>, 505 U.S. at 880, the Supreme Court upheld against a facial challenge

a virtually identical definition of "medical emergency."  In that case, the plaintiffs argued

before the Third Circuit that the definition was not only too narrow (according to the

plaintiffs, there were three medical emergencies not covered by the statute) but that it

was also void for vagueness.  The Third Circuit rejected both arguments.  <u>Planned

Parenthood v. Casey</u>, 947 F.2d 682, 701 (3d Cir.1991), <u>aff'd in relevant part</u>, 505 U.S.

833 (1992).  Addressing the void-for-vagueness argument, the Third Circuit stated:

> In this case, the statute requires a physician to violate his or
> her own good faith clinical judgment in order to be criminally
> liable. This is a subjective, not an objective standard, thus
> making the case more similar to <u>Vuitch</u> and <u>Doe</u> than to
> <u>Colautti</u>.[6]  We fail to see how any physician practicing in
> good faith could fear conviction under the Act.

<u>Casey</u>, 947 F.2d at 702.

In Florida, when deciding whether to proceed with an abortion without notice, a

physician must make two intertwined decisions, both of which are governed by a good

---

[6]  In <u>United States v. Vuitch</u>, 402 U.S. 62, 69-72, 91 S. Ct. 1294, 28 L. Ed. 2d 601
(1971), the Supreme Court upheld against a vagueness challenge a requirement that an
abortion be "necessary for the preservation of the mother's life or health."  In <u>Doe v.
Bolton</u>, 410 U.S. 179, 191-92, 93 S. Ct. 739, 35 L. Ed. 2d 201 (1973), the Court upheld
against a vagueness challenge a requirement that the physician determine, on the basis
of his or her "best clinical judgment," that an abortion is "necessary."  In <u>Colautti v.
Franklin</u>, 439 U.S. 379, 390-97, 99 S. Ct. 675, 58 L. Ed. 2d 596 (1979), the Court struck
down on vagueness grounds a requirement that the physician determine if the fetus "is
viable" or "may be viable" before performing an abortion, stating that it was unclear
whether the Act incorporated a subjective or objective standard.

faith standard.  First, the physician must determine whether, in his or her good faith *clinical* judgment, a medical emergency in fact exists.  Second, the physician must decide whether, in his or her good faith judgment, there is insufficient time to comply with the Act's notification requirements.  As the Third Circuit noted in <u>Casey</u>, the good faith standard is a subjective, not an objective, standard.  Like that court, this court fails "to see how any physician practicing in good faith could fear conviction under the Act." <u>Casey</u>, 947 F.2d at 702.

Plaintiffs at one time argued that the "insufficient time" language is constitutionally infirm because it fails to provide physicians with sufficiently clear guidance on when the Act's medical emergency provision applies.  This court rejected that argument in its previous order, finding that the Act gives physicians a reasonable opportunity to know the parameters shaping their conduct.  Specifically, the court wrote:

> The Act requires a physician to give actual notice in person or by telephone at least 48 hours before performing an abortion.  If the physician is unable, after a reasonable effort, to reach a parent in person or by phone, he or she must provide constructive notice by mail, in which case delivery is deemed to have occurred after 72 hours have passed. Because the Act does not require that a physician make reasonable effort to effect actual notice *before* he or she sends constructive notice to a minor's parent, a physician may start the 72-hour constructive notice clock running, then make a reasonable effort to reach a parent in person or by phone.

Doc. 32 at 27.  The court determined, in other words, that the Act permits physicians to place a limit (72 hours) on the time in which they must give notice to a minor's parents.

Plaintiffs now suggest that this court's "limiting construction" of the "insufficient time" language may be sufficient to save the Act's medical emergency provision from a

vagueness challenge.  Plaintiffs accordingly urge the court to enter a declaratory

judgment, *in their favor*, upholding the medical emergency provision with the "limitation"

described above.  The court's decision, however, is *not* in Plaintiffs' favor.  Plaintiffs

have challenged the Act's medical emergency provision on vagueness grounds, and

this court has determined that the provision is *not* vague.  Instead, as the court wrote in

its previous order, the Act's medical emergency provision lays no "trap [for] the innocent

by not providing fair warning."  Doc. 32 at 27 (quoting Grayned v. City of Rockford, 408

U.S. at 108).  In language that is--perhaps--as definite as language can be in the

medical emergency context, the Act sets forth a good-faith-judgment standard with

which physicians should not only be familiar but also comfortable.  It sets reasonable

limits on the time for giving notice to a minor's parent; and, while it adds a factor (time

for notice) to a physician's typical decision about when medical intervention is needed to

avoid death or serious risk of substantial and irreversible impairment of a major bodily

function, it does not make the physician's decision about when to intervene--a decision

that always has been, and always will be, fraught with uncertainty

--substantially more difficult than it would have been without the additional time-for-

notice factor.  Because Plaintiffs have failed to establish that the Act's medical

emergency provision is so vague that physicians must necessarily guess at its meaning

and differ as to its application, the court finds that the defendant is entitled to dismissal

of Plaintiff's claim regarding the medical emergency provision.

## C.

Plaintiffs also challenge on vagueness grounds the Act's requirement that a

physician must give 48 hours' constructive notice to a minor's parent or legal guardian

"if actual notice is not possible after a reasonable effort has been made."  Fla. Stat. §

390.0114(3)(b).[7]  Plaintiffs contend that this requirement is unconstitutionally vague

because the Act fails to define what constitutes a "reasonable effort" to effect actual

notice.[8]  This court rejected Plaintiffs' contention in its previous order, stating:

> The term "'reasonable" connotes an objective standard, a
> standard with which physicians, agencies regulating
> physicians, and courts are well acquainted.  See State v. N.
> Florida Women's Health & Counseling Servs., 852 So.2d
> 254 (Fla. 1st DCA 2001) (rejecting vagueness challenge to
> "reasonable effort" language in previous abortion notification
> act), quashed on Florida Constitutional grounds, 866 So. 2d
> 612 (2003).  The term is not vague and does not render the
> Act facially unconstitutional.

Doc. 32 at 28.

In Karlin v. Foust, 188 F.3d 446 (7th Cir. 1999), the Seventh Circuit considered a

vagueness challenge to the State of Wisconsin's abortion informed consent statute.  In

particular, the court considered whether the statute's medical emergency provision was

---

[7]  The Supreme Court has upheld, on other grounds, two statutes that have similar provisions.  In Lambert, the Court upheld a Montana statute that requires physicians to give at least 48 hours' actual notice to a minor's parent or legal guardian "unless actual notice is not possible after a reasonable effort," in which case "alternate notice" may be provided.  Lambert, 520 U.S. at 294 n.1.  In Akron, the Court upheld an Ohio statute providing that, if a physician cannot give actual notice "after a reasonable effort," he or she may perform an abortion after "at least forty-eight hours constructive notice."  Akron, 497 U.S. at 507.

[8]  In their cross-motion for partial summary judgment, Plaintiffs state that "the Act is unconstitutionally vague because it 'conditions potential *criminal* liability on confusing and ambiguous criteria,' and thereby presents 'serious problems of notice [and] discriminatory application.'"  Doc. 44 at 15 (quoting Colautti v. Franklin, 439 U.S. 379, 394, 99 S. Ct. 675, 58 L. Ed. 2d 596 (1979)) (emphasis added).  It should be noted that the Florida Act does not subject physicians to criminal liability.

void for vagueness because it required a physician to exercise "reasonable medical

judgment" when deciding whether a medical emergency exists.  The court concluded

that Wisconsin's reasonableness standard--an objective standard--did not render the

medical emergency provision void for vagueness.  The court explained its decision, in

part, as follows:

> [Wisconsin's] medical emergency provision makes clear that
> the operative legal standard is an objective one.  Thus,
> physicians are fully aware that they will be judged solely on
> an objective basis in making the determination that a
> medical emergency exists.  Furthermore, the "reasonable
> medical judgment" standard clearly is an ascertainable and
> comprehensible standard that provides physicians with more
> than "fair warning" as to what conduct is expected of them in
> order to avoid the imposition of liability under [the Wisconsin
> statute] because this is the same standard by which all of
> their medical decisions are judged under traditional theories
> of tort law.  As the district court noted, physicians have a
> duty to exercise due care, i.e. act reasonably, in treating all
> their patients and this duty extends to a physician's decision
> to perform an emergency abortion.

Karlin, 188 F.3d at 464.

Here, the command of the Florida Legislature is clear: a physician must provide

constructive notice to a minor's parent if *reasonable* efforts to provide actual notice are

unsuccessful.  The physician's conduct is thus governed by an objective standard, a

standard that is no less ascertainable than any other legal doctrine that relies on

objective reasonableness.  To be sure, physicians may be more familiar with a

reasonableness standard when such is applied to their medical judgments rather than to

their efforts to effect notice under the Act.  There is nonetheless no uncertainty about

what standard is applicable.  As this court concluded before, the phrase "reasonable

efforts" is not vague, and it does not render the Act unconstitutional.

                                             D.

          Plaintiffs argue that the Act's mandatory reporting requirement places an undue

burden on a minor's right to seek an abortion because it breaches the minor's

confidentiality and potentially creates a chilling effect on the minor's decision to seek a

bypass and/or an abortion.  Plaintiffs cite Bellotti v. Baird, wherein the Supreme Court

held that a judicial bypass process (required for parental *consent* statutes) "must assure

that a resolution of the issue . . . will be completed with anonymity."  Bellotti, 443 U.S. at

644.  Indeed, the Supreme Court has made clear that a judicial bypass provision must

include "*reasonable steps* to prevent the *public* from learning the . . . identity of [a minor

seeking an abortion]."  Akron, 497 U.S. at 513 (emphasis added); see also Bellotti, 443

U.S. at 655 (stating that "it is inherent in the right to make the abortion decision that the

right may be exercised without public scrutiny") (J. Stevens, concurring); Planned

Parenthood v. Lawall, 307 F.3d 783, 789 n.5 (9th Cir.2002) (noting that "the Supreme

Court has interpreted the Bellotti anonymity requirement as mandating roadblocks to

public knowledge of the minor's identity").  That some public officials may have access

to bypass records is not, however, fatal to a bypass provision.  See Planned

Parenthood Ass'n of the Atlanta Area, Inc. v. Miller, 934 F.2d 1462, 1479 (11th Cir.

1991) (explaining that "[t]he fact that some public officials have access to the minor's

court record does not compromise the record's confidentiality, nor does it mean that

they will make unauthorized disclosures of it"); Lawall, 307 F.3d at 388 (finding that

Arizona's parental consent abortion law satisfies the Bellotti anonymity requirement

because the statute limits the categories of state personnel who may access

confidential bypass information).

In Florida, the Act provides that "[i]f the court finds evidence of child abuse or

sexual abuse of the minor petitioner by *any* person, the court shall report the evidence

of child abuse or sexual abuse of the petitioner, as provided in s. 39.201."  §

390.01114(4)(d) (emphasis added).  Section 39.201 provides that "[a]ny person . . . who

knows, or has reasonable cause to suspect, that a child is abused . . . by a parent, legal

custodian, caregiver, or other person responsible for the child's welfare shall report such

knowledge or suspicion to the [Department of Children and Families]."  The Act defines

"sexual abuse of a child" to mean, among other things, "[a]ny penetration, however

slight of the vagina...of one person by the penis of another person."  §§ 390.0114(2)(e),

39.01(63).  A "child" is "any unmarried person under the age of 18 years who has not

been emancipated by order of the court."  § 39.01(12).  Because a minor who seeks a

judicial bypass has, by definition, been the victim of "sexual abuse," Plaintiffs suggest

that the Act requires the circuit court to report every bypass case that comes before it,

whether the minor's sexual partner was a rapist, an abusive parent, or an under-age

boyfriend with whom the child had consensual sex.  Plaintiffs argue that the reporting

requirement is unconstitutional because it could force a minor to choose between

seeking a bypass on the one hand and, on the other hand, having her own anonymity

compromised and/or having her boyfriend reported to DCF.

In response, the defendant stresses that the court's reporting requirement is

qualified by the phrase "as provided in s. 39.201."  Because section 39.201 limits

mandatory reporting to instances involving abuse of a child "by a parent, legal custodian, caregiver, or other person responsible for the child's welfare," the defendant maintains that the Florida Legislature never intended to require circuit courts to report *every* bypass case, even those involving non-criminal consensual sex between minors.

Without trying to glean what the Florida Legislature intended when it added the section 39.201 qualifier to the reporting requirement, the court notes that the Florida Legislature took considerable care to assure the anonymity of a child seeking a bypass of the parental notification requirement.  For example, the Act provides (a) that a bypass petition may be filed under a pseudonym or through the use of initials, § 390.01114(4)(a); (b) that "[a]ll hearings under [the bypass provision], including appeals, shall remain confidential and closed to the public, as provided by court rule," § 390.01114(4)(e); and (c) that circuit court records pertaining to a bypass proceeding, including written transcripts, factual findings and legal conclusions, be maintained as confidential records "as required by s. 390.01116."  § 390.01114(4)(e).  Under section 390.01116, all records that could be used to identify a minor seeking a bypass are confidential and exempt from Florida's public records laws.  By rule, (a) bypass hearings "shall be closed to the public and all records thereof shall remain confidential, Fla. R. Juv. P. 8.820(e); and (b) "any information including the petition, documents, transcripts, recordings of cases, and any other information that could be used to identify a minor who has petitioned the court for a judicial waiver of parental notice of termination of pregnancy is confidential and exempt from section 119.07(1), Florida Statutes, and section 24(a), Article I of the State Constitution."  Fla. R. Juv. P. 8.835.

To the extent the reporting requirement causes a circuit court to provide evidence of "sexual abuse" of a petitioner to DCF, any information received by DCF is required to be kept confidential under section 39.202(1).[9]  Should a DCF employee knowingly or willfully make public any of the confidential information contained in the bypass records received by DCF, that employee is guilty of a misdemeanor of the second degree.  § 39.205(3).  Should DCF be required under section 39.201 to report any information received from the court to law enforcement, the identity of the victim of *any* sexual offense is exempt from public disclosure.  § 119.07(6)(f).[10]

Despite the many steps taken by the Florida Legislature to assure the anonymity of a minor seeking a bypass under section 390.01114(4), Plaintiffs suggest that "[t]he Act's reporting requirement sets in motion a process that will likely result in the minor's parents discovering that the minor has sought an abortion."  Doc. 44 at 18.  Plaintiffs say, for example, that a minor's pregnancy is evidence that "her partner has committed a criminal act;" id. at 17; that "minors who have been reported to the county sheriff's

---

[9]  Section 39.202(1) provides that "[i]n order to protect the rights of the child and the child's parents or other persons responsible for the child's welfare, all records held by the department concerning reports of child abandonment, abuse, or neglect, including reports made to the central abuse hotline and all records generated as a result of such reports, shall be confidential and exempt from the provision of s. 119.07(1) and shall not be disclosed except as specifically authorized by this chapter."

[10]  Section 119.07(6)(f) provides that "any criminal intelligence information or criminal investigative information or other criminal record, including those portions of court records and court proceedings, which may reveal the identity of a person who is a victim of any sexual offense, including a sexual offense proscribed in chapter 794, chapter 800, or chapter 827, is exempt from the provisions of subsection (1) and s. 24(a), Art. I of the State Constitution.

office will likely become the subject – along with their partners – of a criminal investigation;" id. at 18; that "[s]hould a criminal investigation result, it would presumably also involve the minor's parents and/or those of her partner;" id.; and that Florida Statute section 39.202(2) "expressly *directs* that access to records pertaining to reports received by the child abuse hotline 'shall be granted' to *inter alia* the child's parents, the alleged abuser, the principal of the child's school, courts and grand juries." Id. (emphasis in original).

What Plaintiffs, in essence, urge is for this court to adopt a tortured interpretation of Florida law.  Assuming, for the sake of argument, that the bypass courts would construe section 390.01114(4)(d) to mean that they must report *all* bypass cases to DCF, including cases involving consensual sex between minors, it is a stretch to assume that all, or even many, such reports would be released to a sheriff's office or to the parents of minors seeking a bypass.  While it is true that sexual intercourse with a minor can expose a person to criminal charges in some cases,[11] it is also true that minors engage in much sexual activity that is not punishable under the law.  As the defendant suggests, a statutory interpretation that would require reporting non-criminal consensual sexual activity to criminal authorities makes little sense.  It makes just as little sense to interpret section 39.202(2) to mean that parents will *likely* gain access to

---

[11]   In Florida, a person who "[e]ngages in sexual activity with a person 12 years of age or older but less than 16 years of age" commits a felony of the second degree.  § 800.04(4)(a).  A person "24 years of age or older who engages in sexual activity with a person 16 or 17 years of age commits a felony of the second degree."  § 794.05(1).  A person "21 years of age or older who impregnates a child under 16 years of age commits an act of child abuse which constitutes a felony of the third degree."  § 827.04(3).

DCF records.  To be sure, section 39.202(2)(d) provides that access to DCF records

"shall be granted" to a specific list of officials, agencies, and persons, including the

parent or legal custodian of any child who is alleged to have been abused.[12]  Section

39.202(2) does not, however, require DCF to *notify* a minor's parent or legal custodian

that a report has been filed pursuant to section 390.01114(4)(d).

No doubt, in conjunction with some conceivable set of circumstances, it is

possible that the reporting requirement contained in section 390.01114(4)(d) could lead

to a breach in a minor's anonymity.  Yet here, on a facial challenge such as Plaintiffs

bring, it is the court's duty to consider not whether the reporting requirement could lead

to disclosure in some conceivable set of circumstances but whether the requirement is

so onerous as to be "undue."  To be undue, there must be a strong likelihood that the

requirement would prevent a minor from seeking a bypass or from obtaining an abortion

lest her anonymity be compromised.  Given the steps taken by the Florida Legislature to

avoid such a result, the court finds it unlikely that a minor would be thus deterred from

seeking a bypass or an abortion.

Furthermore, the court finds it unlikely that a minor would avoid the bypass

procedure out of fear that her boyfriend might be reported to DCF.  Not only is it unclear

---

[12]  For purposes of section 39.202(d), the term "abuse" is defined to mean acts
that result in "injury or harm that causes or is likely to cause the child's physical, mental,
or emotional health to be significantly impaired."  § 39.01(2).  Such harm or injury
includes, but is not limited to, (a) sprains, dislocations, or cartilage damage; (b) bone or
skull fractures, (c) brain or spinal cord damage, (d) intracranial hemorrhage or injury to
other internal organs, (e) asphyxiation, suffocation, or drowning, (f) injury resulting from
the use of a deadly weapon, (g) burns or scalding, (h) cuts, lacerations, punctures, or
bites, (i) permanent or temporary disfigurement, and (j) permanent or temporary loss or
impairment of a body part or function.  § 39.01(30)(a).

that a minor, who herself may file a bypass proceeding under a pseudonym or initials, would have to provide any name, much less the true name, of her boyfriend; it is also unclear that a circuit court or the DCF would do anything at all to expose the purported identity of a boyfriend who engaged in consensual sex with his girlfriend.

Here, when enacting its parental notification act, the Florida Legislature had the unenviable task of trying to balance the right of a minor to have her confidentiality preserved with the right of parents to protect, nurture, and rear their children.  To that end, the Legislature included a bypass procedure that encompasses many protections for minors seeking abortions.  Not only did the Legislature include steps to prevent the public from learning the identity of a bypass-seeking minor; it also included a reporting requirement that allows appropriate officials to act when "abuse" of the minor has been demonstrated.  As a matter of law, the court finds that Plaintiffs have failed to show that the reporting requirement has either the purpose or the effect of placing a *substantial* obstacle in the path of a minor seeking an abortion.  Absent such a showing, the defendant is entitled to dismissal of Plaintiffs' claim regarding the reporting requirement.

E.

Section 390.01114(3)(c) of the Act provides that "[v]iolation of this subsection [requiring parental notice before inducing or performing an abortion] by a physician constitutes grounds for disciplinary action under s. 458.331 or s. 459.015."[13]  Plaintiffs have alleged in their complaint that this provision violates the liberty and due process

---

[13]  Sections 458.331(1)(z) and 459.015(1)(dd) make physicians subject to discipline if they procure, or aid or abet in procuring, an unlawful abortion.

rights of minors seeking abortions because it chills "the willingness of physicians to provide abortion services to minors due to the imposition of penalties with no scienter requirements."  Compl. at ¶ 39(f).

The First District Court of Appeal of Florida rejected such a claim when it considered the identical provision in the current Act's predecessor (§ 390.01115(3)(c)).  See State v. N. Florida Women's Health & Counseling Servs., 852 So. 2d 254 (Fla. 1st DCA 2001), quashed on other grounds, 866 So. 2d (Fla. 2003).  Although quashed on other grounds, the appellate court's opinion provides some incite into how Florida courts would construe the provision being challenged here.  In the words of the First District Court of Appeal:

> We reject plaintiffs' contention that the Act is facially unconstitutional because it violates the due process rights of physicians.  Sections 458.331(1)(z) and 459.015(1)(dd), Florida Statutes (1999), which make a physician subject to discipline if the physician procures, or aids or abets in procuring, an unlawful abortion, do not purport to make physicians guarantors of their patients' truthfulness.  As used in these statutes, the words "procure" and "aid or abet" signify more than innocent participation in an unlawful abortion. Only if an abortion provider knew, or should have known, that the person seeking the abortion was a minor for whom notice had not been judicially waived or statutorily excused, can the provider be disciplined under the Act or the medical practice acts for performing the abortion. . . .
>          . . . .
>
> The Act does not . . . render physicians subject to discipline who make a good faith, objectively reasonable, effort to comply with the provisions of the Act.  Under accepted principles, the Act must be construed as requiring scienter.

N. Florida Women's Health & Counseling Servs., 852 So. 2d at 269 (case citations

omitted).

The Florida Supreme Court long ago explained that, when considering the

constitutional validity of a statute, courts should follow the following canons of

construction:

> (1) On its face every act of the Legislature is presumed to be
> constitutional; (2) every doubt as to its constitutionality must
> be resolved in its favor; (3) if the act admits of two
> interpretations, one of which would lead to its
> constitutionality and the other to its unconstitutionality, the
> former rather than the latter must be adopted.

Gray v. Central Florida Lumber Co., 104 Fla. 446, 140 So. 320, cert. denied, 287 U.S.

634, 53 S. Ct. 18, 77 L. Ed. 536 (1932).  The supreme court has reiterated these

canons many times since.  See, e.g., State v. Giorgetti, 868 So.2d 512, 518 (Fla. 2004)

(explaining that the court is "obligated to construe statutes in a manner that avoids a

holding that a statute may be unconstitutional"); Capital City Country Club, Inc. v.

Tucker, 613 So. 2d 448, 452 (Fla. 1993) (stating that, "[i]f it is reasonably possible to do

so, [the supreme court is] obligated to interpret statutes in such a manner as to uphold

their constitutionality"); State v. Gale Distribs., 349 So. 2d 150, 153 (Fla. 1977)

(explaining that "[the courts] ha[ve] a duty, if reasonably possible and consistent with

constitutional rights, to resolve all doubts as to the validity of a statute in favor of its

constitutionality and to construe it so as not to conflict with the Constitution").  Florida

courts, moreover, have applied these canons to supply a missing *scienter* requirement

when such a requirement was needed to comport with the Constitution.  See, e.g., State

v. Giorgetti, 868 So.2d at 519 (reading a knowledge requirement into a  registration

statute requiring sex offenders to report within 48 hours any change in the offender's

permanent or temporary address); see also Carter v. United States, 530 U.S. 255, 269, 120 S. Ct. 2159, 147 L. Ed. 2d 203 (2000) (noting that the presumption in favor of *scienter* requires the court to read *mens rea* into a statute to separate wrongful conduct from otherwise innocent conduct).

As represented in their cross motion for partial judgment on the pleadings, Plaintiffs now agree "that the Florida Supreme Court would read in a scienter requirement if necessary to avoid finding the Act unconstitutional."  Doc. 44 at 4. Plaintiffs thus maintain that partial judgment on the pleadings should be entered in their favor--not the defendant's--on their lack of *scienter* claim.  The court disagrees.

In their complaint, Plaintiffs challenged the constitutionality of the Act's penalty provision, asking the court to issue a declaratory judgment that the provision violates the due process rights of physicians and is, therefore, void and of no effect.  In fact, Plaintiffs are entitled to no such relief.  Assuming, for the sake of argument, that the Act's administrative penalty provision requires *scienter*, and assuming also that the terms "procure" and "aid or abet" are insufficient by themselves to connote *scienter*, the provision nonetheless survives Plaintiffs' facial challenge.  As Plaintiffs now concede, *scienter* is ascribed to the provision as a matter of Florida law.  The penalty provision is *not* facially unconstitutional because it lacks an explicit *scienter* requirement.  The court thus finds no basis for invalidating the penalty provision on constitutional grounds.  The defendant is accordingly entitled to dismissal of Plaintiffs' lack of *scienter* claim.

F.

Plaintiffs have alleged in their complaint that the Act is unconstitutional because it

restricts "venue for judicial bypass petitions to the District Court of Appeal in which a minor seeking an abortion resides."  Compl. at ¶ 39(c).  Because the parties have not addressed this claim in their cross motions for judgment on the pleadings, the claim is not yet ripe for this court's review.

G.

As the Supreme Court recently noted in Ayotte, "[s]tates unquestionably have the right to require parental involvement when a minor considers terminating her pregnancy, because of their 'strong and legitimate interest in the welfare of [their] young citizens, whose immaturity, inexperience, and lack of judgment may sometimes impair their ability to exercise their rights wisely.'"  Ayotte, 126 S. Ct. at 965 (quoting Hodgson v. Minnesota, 497 U.S. at 444-45 (opinion of STEVENS, J.)).  In this case, the State of Florida has carefully crafted a parental notification statute that serves a compelling state interest.  To the extent discussed above, that statute also places no undue burdens on the rights of minors seeking abortions or on the physicians who perform those abortions.

Accordingly, it is ORDERED:

1.  Plaintiffs' cross motion for partial judgment on the pleadings (doc. 44) is DENIED.

2.  The defendant's motion for judgment on the pleadings (doc. 36) is GRANTED in part, with the following claims being DISMISSED: (1) Plaintiffs' claim that the Act violates the due process rights of physicians (and minors seeking abortions) because . the penalty provision lacks a *scienter* requirement; (2) Plaintiffs' claim that the Act is

unconstitutionally vague in that it fails to define what constitutes a physician's "reasonable effort" to effect notice; (3) Plaintiffs' claim that the Act is unconstitutionally vague in that it fails to give physicians adequate guidance about when the medical emergency provision applies; (4) Plaintiffs' claim that the Act impermissibly burdens the right of minors to seek an abortion by failing to contain any deadlines for resolution of appeals from a dismissal of a bypass petition; (5) Plaintiffs' claim that the Act violates the right of out-of-state minors to travel by failing to provide a venue for non-resident minors seeking abortions in Florida; and (6) Plaintiffs' claim that the Act burdens the right of minors to confidentially and anonymously seek an abortion by requiring the court to report evidence of sexual abuse.

3.  The parties shall have until March 10, 2006, to file appropriate motions, if any, regarding the lone remaining claim in the case: that the Act's venue provision places an undue burden on in-state minors.  The parties are encouraged to address what effect, if any, the Florida Supreme Court's new rule regarding venue in judicial waiver proceedings (i.e., changing the wording of the venue provision from permissive to mandatory) has on the undue burden analysis.

DONE AND ORDERED this February 10, 2006.

 /s William Stafford                                      
WILLIAM STAFFORD
SENIOR UNITED STATES DISTRICT JUDGE